318 So.2d 492 (1975)
COLLIER COUNTY PUBLISHING CO., INC., Appellant,
v.
Benjamin F. CHAPMAN, Appellee.
No. 74-327.
District Court of Appeal of Florida, Second District.
September 5, 1975.
*493 Carroll, Vega, Brown & Nichols, Naples, and Julian D. Clarkson, Henderson, Franklin, Starnes & Holt, Fort Myers, for appellant.
Charles R. Holley, Naples, for appellee.
GRIMES, Judge.
Appellant (newspaper) appeals a final judgment in a libel action entered in favor of appellee, hereinafter called plaintiff. The facts as alleged and established at trial are summarized as follows:
During February, 1973, plaintiff was the proprietor of a Kirby vacuum cleaner business in Naples. Plaintiff and the other tenants in Village Plaza shopping center paid for an advertisement in the newspaper to promote the grand opening of the center. A Kirby vacuum cleaner was to be given away as the grand prize. Although the retail price of the vacuum cleaner was $339, the layout sheet prepared by the newspaper's advertising department contained the legend "$133 value."
Two days before the ad was to run in the newspaper, the advertising salesman visited the shopping center merchants with the layout sheet. Plaintiff called his attention to the error in price and furnished the correct figure of $339. The salesman did not write the correct figure on the layout sheet but said he would take care of the correction. The next day the salesman returned with a final paste-up which still did not have the correct price. However, he assured plaintiff that he had taken care of the correction at the newspaper office and repeated this assurance later in the day. Notwithstanding these repeated requests for the correction and the assurance that the correction would be made prior to publication, *494 the advertisement as it appeared in the newspaper contained the erroneous legend "$133 value."
The judgment entered was for both compensatory and punitive damages. Compensatory damages were in the amount of $7,800.02. The remainder of the final judgment was for punitive damages in the amount of $5,000.
The case was tried under a misconception of a cause of action, to wit, libel of a person. The plaintiff's allegations in his complaint and his proof at trial did not establish a cause of action of libel to the person. The plaintiff's allegations and proof did, however, establish a cause of action for what has variously been called slander of title, disparagement of property, slandered goods, trade libel and injurious falsehood. See W. Prosser, Law of Torts (4th Ed. 1971) p. 915.
Prosser, in his law review article, Injurious Falsehood: The Basis of Liability, 1959, 59 Col.L.Rev. 425, makes a comprehensive review of the cases decided to date involving this cause of action. He then states:
"Reviewing this group of cases, what conclusions may be drawn? First, it is quite clear that entirely innocent statements made in complete good faith are not a basis for liability for injurious falsehood. Even negligence in making the statement is, notwithstanding Atkins v. Perrin, not enough. There must be something in the way of an improper intent or motive or of bad faith. Is it possible to define this element more exactly?
"Old-fashioned `malice,' in the sense of spite or ill will or a desire to do harm to the plaintiff for its own sake, undoubtedly still is sufficient to make the defendant liable, even where he honestly believes his statement to be true and would otherwise have a privilege to make it. One who speaks for such a malevolent purpose takes the risk that what he says will prove to be false. But improper intent or purpose includes more than this. It includes the defendant who purposely interferes with the interests of the plaintiff in a manner in which he is not privileged so to interfere... . The unprivileged purpose to do harm is itself malice, and it is in such cases that the word has been defined to mean without just cause or excuse. There will, of course, be many cases in which one with a legitimate interest of his own to protect will be privileged to make a statement which, although false and damaging, is thought to be accurate, but if he has no such privilege, or if he abuses or exceeds it, his purpose to interfere with the interests of another is enough in itself to make him liable.
"Finally, defendant will be liable if he knows that what he says is false, regardless of whether he has a spite motive or intends to affect the plaintiff at all. The deliberate liar must take the risk that his statement will prove to be economically damaging to others if a reasonable man would have foreseen the possibility. What has developed here is a basis of `scienter' closely analogous to that found in the action for deceit. As in the deceit cases, it has been extended to include statements made recklessly, or in conscious ignorance of their truth. Short of this, the line is drawn. Negligence, the mere lack of reasonable ground or `probable cause' for the defendant's belief, is not enough so long as the belief itself is an honest one. Such lack of reasonable ground may, of course, permit the jury to infer that no honest belief existed; but that inference is not a compulsory one, and if it is not drawn, there is no liability."
What, then, should be the disposition of the instant case? Even though they were stated in terms of personal libel, the instructions appear to have been sufficient to permit the jury to determine *495 whether the defendant had committed a trade libel. The court told the jury that it was necessary for the plaintiff to prove "legal malice" and defined this term as follows:
"Legal malice exists in this case if there is anyone of the following: Actual malice, ill will, hostility or evil intention to defame or injure, or two: That the false publication was made with such gross and reckless negligence as to amount to actual malice or the false publication was made with reckless disregard of the plaintiff's rights or false publication was made with moral turpitude or the false publication was made wantonly, or the false publication was made under such circumstances as to be outrageous."
This standard is at least as strong as what Prosser would call "statements made recklessly or in conscious ignorance of their truth." The jury resolved this issue, and the evidence was sufficient to support the verdict to the extent of the liability of the defendant for compensatory damages. However, the damage award itself must be set aside because the jury was erroneously instructed that the plaintiff could recover damages for mental suffering and injury to his reputation. Damages recoverable in an action for trade libel are the plaintiff's pecuniary losses. Upton House Cooler Corp. v. Alldritt, Fla. 1954, 73 So.2d 848. As stated in W. Prosser, Law of Torts (4th Ed. 1971) at page 922:
"... Such personal elements of damage as mental suffering, which frequently are recoverable in defamation, have been very strictly excluded from actions for disparagement and injurious falsehood. .. ."
See also, 50 Am.Jur.2d, Libel and Slander, § 550.
The evidence was legally insufficient to sustain the claim for punitive damages. The "malice" sometimes referred to as supporting an action for punitive damage is not necessarily the same as the "legal malice" often said to be necessary to prove a claim for trade libel. See Gates v. Utsey, Fla.App.1st, 1965, 177 So.2d 486. In a slander of title action the court in Kidd v. Hoggett, Tex.Civ.App. 1960, 331 S.W.2d 515, pointed up this distinction by saying:
"How malice is defined, however, is another matter. Malice as a basis for recovery of actual damages, as distinguished from punitive damages should mean that the act or refusal was deliberate conduct without reasonable cause. See, 8 Institute on Oil and Gas, 357. Malice as a basis for recovery of punitive damages should mean actual malice, that is, ill will, bad or evil motive, or such gross indifference to or reckless disregard of the rights of others as will amount to a wilful or wanton act... ."
There were no bad feelings between the parties in the instant case prior to the incident in question. The defendant was not intentionally trying to damage the plaintiff's business. There was no spite or ill will involved. The conduct which permitted the erroneous publication to occur was not such as would justify an award of punitive damages.
The determination of liability for compensatory damages is affirmed, but the case is remanded for a new trial on the amount of these damages. The judgment for punitive damages is reversed.
HOBSON, Acting C.J., and SCHEB, J., concur.