**Terri A. Sabia v. Anna Neville, Meta Strick & Dennis LaPlant**

[687 A.2d 469]

No. 95-405

Present: **Allen, C.J., Gibson, Dooley and Johnson, JJ., and Teachout, Supr. J., Specially Assigned**

Opinion Filed October 18, 1996

*Kurt M. Hughes* of *Murdoch & Hughes*, Burlington, for Plaintiff-Appellant.

*Jeffrey L. Amestoy*, Attorney General, Montpelier, and *Michael O. Duane*, Assistant Attorney General, Waterbury, for Defendants-Appellees.

**Dooley, J.** This is a companion case to *Sabia v. State*, 164 Vt. 293, 669 A.2d 1187 (1995) (*Sabia I*), in which we decided that two sexually abused minors could bring a tort action against the State of Vermont when state social workers neglected their statutory duty to provide assistance to stop the abuse. While *Sabia I* was pending in the trial court, one of the plaintiffs in that action brought this separate suit against the social workers, Anna Neville and Meta Strick, in their personal capacities, and against the alleged abuser, plaintiff's stepfather Dennis LaPlant. The Chittenden Superior Court granted summary judgment for the social workers (hereinafter, defendants), holding that they enjoyed qualified immunity from the tort claims

against them.[1] Plaintiff challenges this ruling, as well as defendants' other arguments in support of dismissal of the complaint. We reverse and remand.

The basic allegations were stated in *Sabia I* as follows:

> Plaintiff Toni Patterson, who was twenty-two years old when she filed suit in May 1992, was first sexually abused by her stepfather, Dennis Laplant, at the age of six or seven. She was thirteen years old in 1983 when she reported the abuse to a teacher, who informed SRS. An SRS supervisor met with Toni and the teacher in March 1983, at which time the supervisor stated that she would be in touch, and that either Toni or her stepfather would be removed from the home. No action was taken.
>
> Plaintiff Terri Sabia, who is three years younger than her sister, was sexually abused by her stepfather beginning at age five. When Terri was approximately seven years old, a babysitter reported to SRS that she had observed physical signs of sexual abuse while bathing Terri. Apparently, nothing was done in response to the report. In 1983, when Terri was eleven years old, she reported to the school nurse and principal that Laplant had sexually assaulted her. School officials notified the director of the Franklin County Family Center, who investigated and reported to SRS that Laplant had admitted having sexual intercourse with Toni and "touching" Terri. SRS took no action in response to the report. The continuing abuse was reported to SRS again in 1986, but again nothing was done. Laplant's sexual abuse of plaintiffs continued unabated until 1987.

*Id.* at 297, 669 A.2d at 1190.

The above facts were based solely on the allegations in the complaint. As discussed below, this action has had some factual development in support of the cross-motions for summary judgment, and defendants have denied any knowledge of the sexual abuse of plaintiff. Also, plaintiff's sister, Toni Patterson, has not joined in this action.

In her complaint, plaintiff alleged that defendants were negligent and grossly negligent and that they intentionally inflicted emotional

---

[1] The case is still pending in the superior court against Dennis LaPlant. Pursuant to V.R.C.P. 54(b), the superior court has entered judgment on the claims against defendants Neville and Strick. The claims against LaPlant are not before us.

distress on plaintiff. Defendants immediately moved to dismiss the negligence counts on the ground that a damage action based on the negligence of a state employee must be brought against the state. See 12 V.S.A. § 5602(a). The court granted the motion to dismiss, and plaintiff has not contested that decision on appeal.

Defendants moved for summary judgment on the remaining counts based on affidavits that are summarized below. Defendants argued that based on the undisputed facts they were not grossly negligent and did not intentionally inflict emotional distress on plaintiff. They also argued that their actions were protected by qualified immunity. After plaintiff responded with affidavits, the superior court granted summary judgment for defendants based on qualified immunity and did not reach defendants' other arguments. Plaintiff argues here that the qualified immunity decision is erroneous and further that none of defendants' grounds for summary judgment are valid. We agree that it was error to grant summary judgment based on qualified immunity, but do not reach the other arguments because they have not been considered by the trial court.

Plaintiff has relied upon three affidavits in opposition to defendants' motion for summary judgment. The affidavit of plaintiff states that Dennis LaPlant sexually abused her from age five and had sexual intercourse with her from age six. The acts continued until she was at least fifteen years old. She stated that the acts were first disclosed in 1979 to a neighbor who reported them to SRS.

According to plaintiff's affidavit, her older sister Toni reported the ongoing sexual abuse of herself to a school teacher in 1982. The report was relayed to defendants, and defendant Strick interviewed Toni Sabia, who was then thirteen years old. At the interview, Toni told Strick that she had been sexually abused by LaPlant since she was six or seven years old. Defendant Strick promised to remove Toni or LaPlant from the home.

Also according to the affidavit, plaintiff reported the ongoing sexual abuse to a school nurse, who reported it to the director of the Franklin County Family Center. The director interviewed Dennis LaPlant, who admitted sexual abuse of both Toni and plaintiff. The director "reported the results of her investigation to SRS."

Finally, plaintiff stated in her affidavit that she reported the abuse to an SRS investigator in 1986. According to the affidavit, she reported to the investigator that LaPlant had touched her under her clothes, the abuse was ongoing, and it had not been discontinued. She stated she was scared during the interview.

The teacher submitted an affidavit, dated April 15, 1993, confirming what plaintiff stated about her actions. There is no specific statement in this affidavit that Toni disclosed that plaintiff was also being sexually abused by LaPlant. Her affidavit ends, however, with the following paragraph:

12. It is very clear to me that the failure of SRS to act on Toni's report that she and Terri were being sexually abused was directly responsible for extreme emotional distress on the part of both girls, not to mention myself.

The teacher also submitted an affidavit for defendants. This affidavit, dated December 20, 1994, states that neither Toni nor plaintiff told her of LaPlant's abuse of plaintiff at any time during the 1980s. She states that she first learned of the abuse of plaintiff from Toni following the institution of criminal charges against LaPlant in 1991.

The director of the Franklin County Family Center prepared an affidavit on October 14, 1983, stating that she had learned of the sexual abuse of Toni from a school guidance counselor and that she interviewed Toni. Toni at first stated that she did not believe that LaPlant had sexually abused plaintiff, but on September 21, 1983 called the director to tell her that LaPlant "had molested Terry." The director met that day with Toni and the neighbor to whom, according to her affidavit, plaintiff had first reported the sexual abuse. The neighbor described being present in the bathroom of plaintiff's house, while plaintiff was bathing, and noticing that plaintiff's vagina was red and swollen. The neighbor started asking plaintiff questions, and plaintiff disclosed LaPlant's sexual abuse in response. The director then met with plaintiff, who described the sexual abuse, and the mother of Toni and Terri, who admitted it was happening.

The affidavit goes on to an entry for the next day as follows: "Contacted SRS 9/22 - Spoke to Meada regarding this family." On the same day Dennis LaPlant called for an appointment, which was set up for September 29th. According to the affidavit, the director again contacted SRS on the 29th and "spoke to Meada to see if Gary could be present when Dennis would be there." The "Gary" in the affidavit is apparently Gary Greenfield, an investigator for the Franklin County State's Attorney. The affidavit goes on to describe the director's meeting with LaPlant, in which he admitted the sexual abuse of both Toni and Terri.

Defendants submitted affidavits which contradicted in numerous respects the statements contained in the affidavits submitted by

plaintiff. Generally, defendants denied knowledge of LaPlant's abuse of plaintiff.

Defendant Neville states that she was the District Director of the St. Albans SRS office up until September 1987 and "supervised SRS investigative social workers." She denies receiving any "written report or written statement by" the director of the Franklin County Family Center. As to the 1986 investigation, she asserts that plaintiff "denied that she had been abused by LaPlant since SRS' [sic] had last investigated this matter" and, therefore, that no further intrusion into the family was warranted because there was no current abuse and plaintiff was not seeking protection.

Defendant Strick states in her affidavit that her SRS work responsibility from 1977 until May 1985 was to "perform child abuse and neglect investigations." She states that she interviewed Toni in 1983, but no information from that interview "constituted a report . . . of child abuse regarding" plaintiff. She further states that she never received a copy of the director's affidavit and she was not employed by SRS in 1986.

Based on the above record, the superior court found that defendants were protected by qualified immunity because they acted in good faith. The court's reasoning was as follows:

> Defendants investigated a report of abuse concerning plaintiff's sister. At that time there were no allegations of abuse of the plaintiff, herself. Defendant Strick interviewed plaintiff's sister and did not receive any information which warranted a child abuse investigation with respect to plaintiff. Based on an objective standard, defendants did not violate any clearly established rights of plaintiff. Plaintiff has failed to show that defendants should reasonably have known that their acts or omissions violated plaintiff's rights.

█ The general rule in Vermont is that lower-level government employees, like defendants, are protected from tort liability by qualified immunity when they perform discretionary acts in good faith during the course of their employment and within the scope of their authority. See *Hudson v. Town of East Montpelier*, 161 Vt. 168, 171, 638 A.2d 561, 563 (1993). Plaintiff does not contest that two parts of this standard are met. While engaged in the acts or omissions on which plaintiff claims liability, defendants were performing a discretionary function and were acting during the course of their employment and within the scope of their authority. The question of whether

defendants enjoy qualified immunity turns, therefore, on whether they were acting in good faith. See *Murray v. White*, 155 Vt. 621, 629, 587 A.2d 975, 980 (1991) (whether qualified immunity attaches for social worker alleged to have negligently conducted investigation into charges of sexual abuse depends on whether defendant acted in good faith).

Good faith exists where an official's acts did not violate clearly established rights of which the official reasonably should have known. *Id.* at 630, 587 A.2d at 980. To make this determination, we have adopted the objective good-faith test from § 1983 qualified-immunity case law. See *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). The outcome of the inquiry depends on the objective reasonableness of an official's conduct, as measured by reference to clearly established law. *Murray*, 155 Vt. at 630, 587 A.2d at 980. Of course, when we consider state tort liability, the "clearly established law" is not limited to federal constitutional and statutory rights, but may include Vermont statutes, regulations and common law. See *id.* at 630 n.4, 587 A.2d at 980 n.4.

We adopted the federal objective good-faith inquiry to prevent exposing state employees to the distraction and expense of defending themselves in the courtroom. See *Levinsky v. Diamond*, 151 Vt. 178, 191, 559 A.2d 1073, 1081-82 (1989) (objective standard of good faith helps to avoid excessive disruption of government and permits resolution of many insubstantial claims on summary judgment). We declined to adopt a subjective good-faith test because "a material issue of fact would always be present, precluding summary judgment and forcing lower-level state employees to undergo, at the very least, extensive discovery and motion practice in defending their actions." *Id.* at 199, 559 A.2d at 1087. In applying the good-faith standard to the facts of this case, we look first at the theory of liability. In *Sabia I*, we held that the State of Vermont could be liable "when state social workers neglect their statutory duty to provide assistance to children seeking protection from sexual abuse." 164 Vt. at 296, 669 A.2d at 1190. The duty of care was derived mainly from 33 V.S.A. § 4915(a), which requires the Commissioner of SRS to investigate reports of child abuse within seventy-two hours of receipt. The statute goes on to detail the content of the investigation, *id.* § 4915(b) and require that, if the investigation discloses that the child has been abused or neglected, "the commissioner shall cause assistance to be provided to the child and his family in accordance with a written plan of

treatment," *id.* § 4915(c).[2] We stated in *Sabia I* that "it is beyond dispute that the relevant statutory provisions create a duty on the part of SRS to assist a particular class of persons to which plaintiffs belong and to prevent the type of harm suffered by plaintiffs." 164 Vt. at 299, 669 A.2d at 1192.

We have addressed the good-faith prong of qualified immunity in two cases that involved similar liability theories to that involved here. The first is *Murray v. White*, where the plaintiff alleged that the defendant, a social worker, did an inadequate investigation of a charge that the plaintiff sexually abused two children and, as a result, the State wrongfully attempted to revoke his conditional pardon. We held that the defendant's actions were protected by qualified immunity because she followed the statutory investigation protocol, 33 V.S.A. § 4915(b), as well as the relevant sections of the SRS policy manual:

> The fact that defendant's investigation was in compliance with statutory requirements, combined with an inability to find any clearly established law that imposed on defendant an obligation to investigate further, compels the conclusion that the extent of defendant's investigation was in good faith. Defendant should not have reasonably known that she was obligated to investigate any further than she did. In addition, defendant should not have reasonably known that the manner of her investigation violated plaintiff's rights.

155 Vt. at 632, 587 A.2d at 981.

In the second case, *LaShay v. Department of Social & Rehabilitation Services*, 160 Vt. 60, 625 A.2d 224 (1993), the plaintiff was a child in SRS custody who was allegedly sexually abused by his foster father in the home in which he was placed by SRS. The plaintiff sued the defendant, an SRS supervisor, alleging that the defendant had been warned by another foster parent that the plaintiff's foster father had previously requested sex with a minor, but the defendant did nothing to protect the plaintiff. We reversed a decision that the defendant's acts were protected as a matter of law by qualified immunity. *Id.* at 67, 625 A.2d at 228. The primary basis for our ruling was that the evidence supported the conclusion that the defendant

---

[2] 33 V.S.A. § 4915(c) was amended in 1996 to modify the commissioner's obligation of assistance. 1995, No. 178 (Adj. Sess.), § 300. This additional language was not in effect at the time of the events that give rise to plaintiff's liability claim, and we do not consider it.

had "violated his statutory duty, and, therefore, did not act in good faith." *Id.*[3]

In this case, the issue of immunity was resolved on defendants' motion for summary judgment. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law, after giving the benefit of all reasonable doubts and inferences to the nonmoving party. *Select Design, Ltd. v. Union Mut. Fire Ins. Co.*, 165 Vt. 69, 72, 674 A.2d 798, 800 (1996). The standard on appeal is the same as in the trial court.

The trial court granted summary judgment based on its conclusion that defendants were unaware of LaPlant's abuse of plaintiff or were aware of past, isolated incidents that did not warrant intervention at the time they were disclosed. Defendants urge us to adopt this position by refusing to consider plaintiff's affidavit because much of it is not based on personal knowledge. See V.R.C.P. 56(e) ("affidavits shall be made on personal knowledge" and "such facts as would be admissible in evidence"); *Levy v. Town of St. Albans*, 152 Vt. 139, 145, 564 A.2d 1361, 1365 (1989) (affidavit not based on personal knowledge).

In ruling on a motion for summary judgment, it is not appropriate for us to resolve disputed issues of fact or questions of credibility. See *Pierce v. Riggs*, 149 Vt. 136, 139-40, 540 A.2d 655, 657 (1987). We would have to violate this rule to uphold the trial court's decision. Without considering the hearsay in plaintiff's affidavit, there is a clear dispute of fact over whether defendant Strick knew about LaPlant's ongoing sexual abuse of plaintiff. It is a fair inference from the affidavit of the director of the Franklin County Family Center that she learned of this abuse on September 21, 1983, and told defendant Strick the next day, when she spoke with her on the telephone. This inference is reinforced by the record of an additional conversation a week later when the director was trying through defendant Strick to arrange for the presence of a criminal investigator at an interview

---

[3] The theory of liability in *LaShay* was somewhat different from that here. The plaintiff in that case argued that the defendant, a social worker supervisor, had a duty to report the allegations made against the plaintiff's foster father to the Commissioner of SRS pursuant to 33 V.S.A. § 4913(a) and that the report would have triggered actions to protect the plaintiff. We noted that the defendant did not dispute the plaintiff's legal analysis, but claimed he did not receive the allegations. *LaShay*, 160 Vt. at 66, 625 A.2d at 228.

Although the legal theory of *LaShay* is different, we believe its analysis of qualified immunity is determinative, as discussed below.

with LaPlant. Although Strick's affidavit states that she had not seen the director's affidavit prior to the commencement of this litigation, it says nothing about the content of telephone calls.

We also do not believe that we can neatly separate out the information about Toni from the information about plaintiff. If LaPlant sexually abused Toni, it would not be unexpected that LaPlant would sexually abuse plaintiff. Thus, any duty Strick had to investigate the allegation with respect to Toni, and provide assistance, may have included an accompanying obligation to investigate whether LaPlant was also sexually abusing plaintiff.

We consider the question closer with respect to defendant Neville because there is no evidence from which we can infer that anyone informed her directly about the abuse of plaintiff. In early 1983, Neville was made aware of allegations of sexual abuse of Toni. In addition, Neville supervised defendant Strick and the social worker who interviewed plaintiff in 1986, and was presumably aware of what information they received. At least as to the social worker in 1986, there is a conflict in the evidence about what she knew. If plaintiff's testimony were accepted, this worker knew that the sexual abuse of plaintiff was ongoing. Resolving all inferences and reasonable doubts against summary judgment, as we must, we cannot conclude that Neville was so unaware of the abuse of plaintiff that she acted in good faith as a matter of law.

Defendants suggest another method of upholding the trial court by arguing that the duties imposed by 33 V.S.A. § 4915 are those of the Commissioner of SRS and not others who work for the Commissioner. We find this argument unpersuasive. The potential liability of the State of Vermont explained in *Sabia I* is based upon "the negligent or wrongful act or omission of an employee of the state." 12 V.S.A. § 5601(a). Nothing in the opinion suggests that the "employee" involved was the Commissioner. Indeed, there is no allegation either in *Sabia I* or in this case that the Commissioner of SRS acted or failed to act with respect to Toni or plaintiff. Instead, it is clear that the employee, or more precisely the employees, were the SRS employees who are defendants in this case. See *Sabia I*, 164 Vt. at 296, 669 A.2d at 1190 (issue in case is whether State can be liable when "state social workers neglect their statutory duty"). Thus, we believe *Sabia I* has resolved this argument against defendants.

Even if it had not been resolved, we do not find it persuasive. Defendants could not seriously suggest that the Legislature intended the Commissioner personally to investigate reports of child abuse and

to render assistance. As defendants' affidavits admit, it was their responsibility to act on reports of child abuse, and both had some involvement in the events underlying this case. It would ignore reality to hold that the actionable breach of duty, if any, would have to be that of the Commissioner.[4]

Since we cannot accept the reasoning of the trial court, or the alternative argument of defendants, we hold that it was error to grant defendants summary judgment based on qualified immunity. The case is in much the same posture as *LaShay* and is governed by that holding. Based on the record before us, a fact-finder could conclude that defendants violated their statutory duties under 33 V.S.A. § 4915. See *LaShay*, 160 Vt. at 67, 625 A.2d at 228. The duties imposed by the statute are clear and mandatory. We cannot hold, therefore, that defendants are protected by qualified immunity as a matter of law.

Plaintiff has also argued that it would be inappropriate to grant summary judgment for defendants on the other grounds asserted in their motion. Because the trial court has not ruled on these grounds, we decline to do so for the first time in this Court.

*Reversed and remanded.*

---

[4]It would also mean, of course, that no individual could ever be liable because the Commissioner is entitled to absolute immunity. See *LaShay*, 160 Vt. at 64, 625 A.2d at 227.