# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 7, 2011

No. 09-20666

Lyle W. Cayce
Clerk

CONTINENTAL CASUALTY COMPANY,

Plaintiff–Appellee,

v.

CONSOLIDATED GRAPHICS INC.; THOUSAND OAKS PRINTING & SPECIALTIES, INC., doing business as T/O Printing; DANIEL CHAMBERS, an Individual,

Defendants–Appellants,

v.

SENTRY INSURANCE, A Mutual Company,

Intervenor Plaintiff–Appellee.

Appeals from the United States District Court
for the Southern District of Texas

Before DENNIS, OWEN, and SOUTHWICK, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Consolidated Graphics Inc., Thousand Oaks Printing & Specialties, Inc., and Daniel Chambers (collectively, the Consolidated Graphics defendants) seek to recover the cost of defending a suit against them and indemnity for an adverse judgment entered against them in that suit from two insurers, Continental Casualty Company (Continental) and Sentry Insurance (Sentry). The

No. 09-20666

Consolidated Graphics defendants appeal the district court's grant of summary judgment in favor of the insurers. We affirm.

## I

This case concerns whether either Sentry, the primary insurer, or Continental, an excess insurer, has a duty to defend and indemnify the Consolidated Graphics defendants in an underlying tort suit. We begin with the facts of that underlying litigation.

Thousand Oaks Printing & Specialties, Inc. (Thousand Oaks), a California corporation, is a subsidiary of Consolidated Graphics, a large printing and graphics corporation. Rudamac, Inc. (Rudamac) is a family-owned printing company in California. Daniel Chambers, the nephew of Rudamac's owner and president, was employed by Rudamac for approximately nine years. When Chambers's aunt refused to give him an ownership interest in the company, he devised a scheme to direct a substantial portion of Rudamac's business to Thousand Oaks and to become an employee of one of the Consolidated Graphics defendants. He allegedly misappropriated trade secrets, including price information, private data regarding product prices, profit margins, and information about promotions given, to three of Rudamac's customers: Dacor, AIG and Tiger Woods Foundation. Thousand Oaks and Consolidated Graphics were allegedly actively complicit in this scheme.

Rudamac sued Consolidated Graphics, Thousand Oaks, and Chambers in California state court for misappropriation of trade secrets, unfair business practices, intentional interference with prospective economic advantage, breach of fiduciary duty, constructive trust, unjust enrichment, a demand for an accounting, and intentional interference with at-will employment relations.

No. 09-20666

Rudamac alleged that Chambers acted for himself and as the undisclosed agent of Consolidated Graphics and Thousand Oaks. The case was tried to a jury on theories of misappropriation, interference, and breach of fiduciary duty, and the jury found against the Consolidated Graphics defendants on all counts. The jury awarded Rudamac $5,698,000 in compensatory damages. The jury also awarded $1,500,000 in punitive damages against Thousand Oaks and $6,647,000 in punitive damages against Consolidated Graphics. The judgment rendered in the California trial court was affirmed on appeal.

Consolidated Graphics and its subsidiaries were insured under two primary liability insurance policies issued by Sentry and an excess liability insurance policy issued by Continental. Each of the policies provided liability coverage for "advertising injury." While the Rudamac litigation was pending, Continental brought a declaratory judgment action against the Consolidated Graphics defendants in federal court, which had diversity jurisdiction. Sentry intervened. Both Continental and Sentry sought a declaratory judgment that they had no duty to defend or indemnify the Consolidated Graphics defendants in the Rudamac litigation, contending that no "advertising injury" had been alleged in that underlying suit or had occurred within the meaning of the policies. The parties filed cross motions for summary judgment, and the district court granted summary judgment in favor of Continental and Sentry. The Consolidated Graphics defendants now appeal.

## II

We first consider Sentry's policies and its duty to defend. The parties agree that Texas law governs, and Texas law instructs that an insurer's duty to

No. 09-20666

defend is determined under the eight-corners doctrine.[1] The court considers only the factual allegations in the pleadings and the terms of the insurance policy.[2] "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured."[3]

In applying the eight-corners rule, the court construes the pleadings liberally.[4] The liability insurer has a duty to defend "if the facts alleged in the pleadings would give rise to any claim within the coverage of the policy."[5]

The Sentry policies included liability coverage for "advertising injury" and provided:

> a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages.
> . . . .
>
> []b[.]  This insurance applies to:
> . . . .
>
> (2)    "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services . . . .

---

[1] *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 132 (Tex. 2010).

[2] *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 744 (Tex. 2009).

[3] *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.,* 279 S.W.3d 650, 654 (Tex. 2009) (internal quotation marks and citation omitted).

[4] *Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

[5] *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 201 (Tex. 2004).

No. 09-20666

"Advertising injury" is defined as:

> injury arising out of one or more of the following offenses:
>
> > a.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> >
> > b.  Oral or written publication of material that violates a person's right of privacy;
> >
> > c.  Misappropriation of advertising ideas or style of doing business; or
> >
> > d.  Infringement of copyright, title or slogan.

The policy does not define the term "advertising" or "advertisement."

The Consolidated Graphics defendants rely on only one of the foregoing offenses, "[m]isappropriation of advertising ideas or style of doing business," in support of their claim in this court that Sentry had a duty to defend them. They point to four paragraphs in the complaint filed by Rudamac in the underlying tort litigation, which alleged:

> 19.  Plaintiff's customer and supplier lists are compilations of detailed information about each of its customers and suppliers. . . .   [T]his information typically included specialized information, including a list of key personnel and decision-makers with the customer or supplier's company as well as specific contract information. . . .
> > . . . .
>
> 21.  Plaintiff's trade secret/financial information includes price information, including private data regarding the competitive pricing of the products, profit margin, particularized pricing information such as mark ups, discounts, or other promotions given . . . .

No. 09-20666

22.    Plaintiff's marketing strategies include Plaintiff's long and short-term plans for developing new and existing suppliers for various orders and products.
. . . .

42.    Plaintiff alleges . . . that [Defendants] utilized [Rudamac's] successful business history and pricing strategy to solicit and misappropriate customers . . . of [Rudamac] . . . .

The district court concluded that the allegations regarding "pricing . . . promotions" alleged "[m]isappropriation of [an] advertising idea[]" within the meaning of Sentry's policy. We will assume, without deciding, that this is a correct construction of the policy under Texas law. We need not reach that issue because the district court further held, and we agree, that there were no facts alleged in the Rudamac litigation that would support a finding that an "advertising injury" was "committed in the course of advertising [the Consolidated Graphics defendants'] goods, products or services" as required under the Sentry policy.

The Consolidated Graphics defendants assert that the term "advertising" must be construed broadly under Texas law. However, decisions of the Texas courts and of this court applying Texas law lead us to conclude that the concept of "advertising" cannot be stretched to encompass the allegations in the Rudamac suit.

The Supreme Court of Texas was called upon to construe the meaning of "advertising" in *Smith v. Baldwin*.[6] The plaintiff in that case had asserted a claim under provisions of the Texas Deceptive Trade Practices Act that declared

---

[6] 611 S.W.2d 611 (Tex. 1980).

No. 09-20666

"'advertising goods or services with intent not to sell them as advertised'" to be a deceptive or misleading practice.[7]  The Texas court turned to Black's Law Dictionary for a definition of "advertise," citing with approval the following definition:

> Advertise.  To advise, announce, apprise, command, give notice of, inform, make known, publish.  On call to the public attention by any means whatsoever.  Any oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business and includes, without limitation because of enumeration, statements and representations made in a newspaper or other publication or on radio or television or contained in any notice, handbill, sign, catalog, or letter, or printed on or contained in any tag or label attached to or accompanying any merchandise.[8]

The misrepresentations at issue in *Smith v. Baldwin* included a builder's statement in a contract to build a home that, when completed, would meet the requirements for a final Veterans Administration inspection compliance report.[9] The Supreme Court of Texas indicated that "advertising" connotes public notice of some sort, and that the representations at issue were not "advertising."[10]  The court reasoned that "[t]he representations concerning compliance with V.A. standards and regulations and the ability to complete the house as scheduled were not marketing devices designed to induce the public to patronize Alan Baldwin, Builder.  Smith was not enticed to enter into a contractual relationship

---

[7] *Id.* at 614 (quoting TEX. BUS. & COM. CODE § 17.46(b)(9)).

[8] *Id.* at 614-15 (quoting BLACK'S LAW DICTIONARY 50 (5th ed. 1979)).

[9] *Id.* at 614.

[10] *Id.* at 615.

7

because of a public notice drawing attention to Baldwin's capabilities as a contractor."[11]

A Texas intermediate court of appeals has held that "advertising injury," when used in an insurance policy, contemplates dissemination to the public. In *ANR Production Co. v. American Guarantee & Liability Insurance Co.*, a Texas court of appeals considered whether an insurer had a duty to defend, pursuant to an insurance policy covering "advertising injury," against claims alleging breach of contract, fraud, negligent misrepresentation, and violations of the Texas Deceptive Trade Practices Act.[12] In holding that the insurer had no duty to defend, the court explained that "'[a]dvertising' is defined as advising, announcing, or publishing a matter to the public. It is distinguished from other forms of communication in that it calls a matter to the public's attention."[13] The court further noted that if it accepted the insured's broad definition of advertising, "any time parties negotiated any kind of contract, there would be a potential for coverage under advertising injury for representations or omissions made during the negotiations."[14]

In *Sport Supply Group, Inc. v. Columbia Casualty Co.*,[15] we considered and applied Texas law in construing the meaning of "misappropriation of advertising ideas" in an insurance policy. We concluded that "[u]nder Texas law, it appears

---

[11] *Id.*

[12] 981 S.W.2d 889, 891-92 (Tex. App.–Houston [1st Dist.] 1998, no pet.).

[13] *Id.* (internal citation omitted).

[14] *Id.* at 892.

[15] 335 F.3d 453 (5th Cir. 2003).

that the term 'advertising' in an insurance policy is used in a conventional sense: to refer to a public announcement (such as on a billboard, in a newspaper, on a signpost, or in a television or radio commercial) that 'induce[s] the public to patronize' a particular establishment or to buy a particular product."[16]

The Consolidated Graphics defendants cite cases from other jurisdictions, including the Minnesota Supreme Court's decision in *General Casualty Co. of Wisconsin v. Wozniak Travel, Inc.,* in which that court defined "advertising" broadly as "any oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business."[17]  The Consolidated Graphics defendants also cite the Wisconsin Supreme Court's decision in *Acuity v. Bagadia*, in which that court observed that "advertising" is "susceptible to multiple reasonable interpretations," including a broad definition encompassing customer solicitation.[18] There are additional decisions in jurisdictions other than Texas that ascribe a broad meaning to the term "advertising."[19]

But Texas is not alone in its view that "advertising," in the context of an insurance policy, requires a measure of public dissemination.  For example, the California Supreme Court, in *Hameid v. National Fire Insurance of Hartford*, considered whether an insurer had a duty to defend under the "advertising

[16] *Id.* at 464 (second alteration in original).

[17] 762 N.W.2d 572, 579 (Minn. 2009) (internal quotation marks omitted).

[18] 750 N.W.2d 817, 828 (Wis. 2008).

[19] *See, e.g.*, *Amway Distribs. Benefits Ass'n v. Fed. Ins. Co.*, 990 F. Supp. 936, 945 (W.D. Mich. 1997) (concluding that "advertising activities" is ambiguous and "can be reasonably interpreted to encompass widespread distribution of materials to the public as well as direct solicitation of small groups or individuals"); *John Deere Ins. Co. v. Shamrock Indus., Inc.*, 696 F. Supp. 434, 440 (D. Minn. 1988) (holding that a company's solicitations to three customers constituted "advertising activity").

injury" coverage of its policy when the underlying complaint alleged that the insured took a competitor's customer list and solicited customers from the competitor.[20] In concluding that the insurer owed no duty to defend, the court interpreted the term "advertising" as used in the policies to mean "widespread promotional activities usually directed to the public at large."[21] The court noted that adopting a broader definition of advertising that would include one-on-one solicitation of customers "would encourage litigation" and "eliminate the clarity and certainty that is essential to the insurance industry."[22] The court further explained that "defin[ing] 'advertising' to mean the widespread distribution of promotional materials to the public at large . . . interprets the contractual term under its ordinary and popular meaning. It allows uniformity in interpretation under different factual circumstances that may or may not lead to coverage."[23] Other courts have expressed similar views.[24]

---

[20] 71 P.3d 761, 762 (Cal. 2003).

[21] *Id.* at 766.

[22] *Id.* at 769.

[23] *Id.*

[24] *See Am. States Ins. Co. v. Vortherms*, 5 S.W.3d 538, 543 (Mo. Ct. App. 1999) (explaining that "[a]n 'advertising idea' implicates one calling public attention to a product or business, particularly by reference to its desirable qualities so as to increase sales or patronage"); *Select Design, Ltd. v. Union Mut. Fire Ins. Co.*, 674 A.2d 798, 800-01 (Vt. 1996) (holding that "advertising" requires widespread distribution to the public at large and thus does not encompass direct customer solicitation); *Smartfoods, Inc. v. Northbrook Prop. & Cas. Co.*, 618 N.E.2d 1365, 1368 (Mass. App. Ct. 1993) (noting that, "[i]n ordinary usage, . . . advertising means a public announcement to proclaim the qualities of a product or point of view"); *Monumental Life Ins. Co. v. U.S. Fid. & Guar. Co.*, 617 A.2d 1163, 1173 (Md. Ct. Spec. App. 1993) (concluding that the plain meaning of the term "advertising" "is *not* susceptible of more than one meaning, and encompasses only the 'public' sense of the word"); *MGM, Inc. v. Liberty Mut. Ins. Co.*, 839 P.2d 537, 540 (Kan. Ct. App. 1992) (holding that the

No. 09-20666

Our responsibility, however, is to discern and apply Texas law. Texas law and our precedent make clear that in the Rudamac litigation against the Consolidated Graphics defendants, it was never alleged that the defendants caused an injury "in the course of advertising your goods, products or services" within the meaning of Sentry's policy. The contacts Chambers had with the three customers were not through public dissemination of any kind. They were direct dealings. The district court did not err in holding that Sentry had no duty to defend the Consolidated Graphics defendants.

## III

With good reason, the Consolidated Graphics defendants do not contend that they have inflicted an "advertising injury" within the meaning of Continental's excess liability policy. That policy defines advertising injury in pertinent part to include "[t]he use of another's advertising idea in your 'advertisement,'" and the policy expressly defines "advertisement" as "notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." The Consolidated Graphics defendants do not assert that any conduct of this nature was alleged in the underlying tort litigation.

The Consolidated Graphics defendants argue only that if Sentry had a duty to defend, then Continental had a duty to defend if Sentry's policy limits

---

term "advertising" as used in an insurance policy means "public or at least widely disseminated solicitation or promotion"); *Playboy Enters., Inc. v. St. Paul Fire & Marine Ins. Co.,* 769 F.2d 425, 429 (7th Cir. 1985) (concluding that the term "advertising" refers to "widespread distribution of promotional material to the public at large"); *Solers, Inc. v. Hartford Cas. Ins. Co.*, 146 F. Supp. 2d 785, 795 (E.D. Va. 2001) (explaining that "[a]dvertising and solicitation differ because advertising must be of a public nature").

No. 09-20666

were exhausted.  We do not consider that argument because, as we have held, Sentry was not obligated to defend the Consolidated Graphics defendants.

**IV**

A remaining issue is whether either of the insurers is obligated to indemnify the Consolidated Graphics defendants.  The district court disposed of this issue in a single sentence, concluding, "Based on the court's finding of no duty to defend, it also follows from this judgment that neither party has a duty to indemnify," citing the Supreme Court of Texas's decision in *Farmers Texas County Mutual Insurance Co. v. Griffin*.[25]  The Consolidated Graphics defendants contend that the duty to indemnify cannot be resolved on the basis of the summary judgment record.

The Supreme Court of Texas did not hold in *Griffin* that there can be no duty to indemnify if there is no duty to defend, and we do not read the district court's opinion to so construe *Griffin*.  The decision in *Griffin* observed that the Texas courts have long recognized that "[a]n insurer's duty to defend and duty to indemnify are distinct and separate duties."[26]  "It may sometimes be necessary to defer resolution of indemnity issues until the liability litigation is resolved. In some cases, coverage may turn on facts actually proven in the underlying lawsuit."[27]  "In many cases, however, the court may appropriately decide the rights of the parties before judgment is rendered in the underlying tort suit."[28]

---

[25] 955 S.W.2d 81, 84 (Tex. 1997).

[26] *Id.* at 82.

[27] *Id.* at 84.

[28] *Id.*

No. 09-20666

In *Griffin* the insurer had no duty to defend, "and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify."[29]   The Supreme Court of Texas therefore was able to determine that there was no duty to indemnify even though the underlying litigation had not concluded.[30]   The Supreme Court of Texas further explained the interplay between and independence of the duty to defend and the duty to indemnify in *D.R. Horton-Texas, Ltd. v. Markel International Insurance Co.*[31]

At the time that the district court determined the insurers had no duty to indemnify the Consolidated Graphics defendants, the trial in the underlying tort litigation had concluded.   Sentry moved for summary judgment based on the charge to the jury and its verdict in that case.   The Consolidated Graphics defendants assert that the charge and verdict do not prove that the claims in that litigation were not covered.   They cite a Fifth Circuit decision, *National Union Fire Insurance Co. of Pittsburgh, Pennsylvania v. Puget Plastics Corp.*,[32] for the proposition that evidence may be admitted in coverage litigation if the underlying case does not resolve the factual issues necessary to determine coverage.   The Consolidated Graphics defendants misapprehend the respective burdens of proof.

Sentry is not relying on an exclusion in its policy in asserting that there is no coverage.   It is relying on the insuring clauses.   Under these circumstances,

---

[29] *Id.* (emphasis omitted).

[30] *Id.*

[31] 300 S.W.3d 740, 743-44 (Tex. 2009).

[32] 532 F.3d 398, 404 (5th Cir. 2008).

No. 09-20666

the Consolidated Graphics defendants have the burden of establishing that the claims for which they seek defense costs and indemnification come within their policy's coverage.[33]  Since the insurers did not have the burden on this issue, they could satisfy their summary judgment burden by pointing to the absence of evidence to support the Consolidated Graphics defendants' case.[34]  Sentry did this by pointing to the jury charge and verdict form.  The Consolidated Graphics defendants then had the burden of "identify[ing] specific evidence in the record and articulat[ing] the manner in which that evidence" showed that they were entitled to coverage.[35]  The Consolidated Graphics defendants did not respond with any evidence that would establish a basis for coverage.  Without any evidence suggesting that the Consolidated Graphics defendants disseminated Rudamac's trade secrets in a public manner, the Consolidated Graphics defendants cannot survive summary judgment.  Accordingly, Continental and Sentry were entitled to summary judgment on this issue.

## V

Lastly, the Consolidated Graphics defendants argue that the district court committed error by granting a motion by Sentry to amend its pleadings on the same day the court entered a final judgment in the case.  They contend that they should have been allowed ten days to respond to the amended pleading.  Sentry and Continental argue that any error in this regard was harmless.  We agree.  The district court did not grant judgment on the pleadings but rather based on

---

[33] *See Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.*, 592 F.3d 687, 692 (5th Cir. 2010).

[34] *See Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).

[35] *Id.* (internal quotation marks and citation omitted).

14

No. 09-20666

Sentry's and Continental's summary judgment motions. The amended pleadings did not alter the summary judgment evidence in the record or the arguments in the motions. Accordingly, any error in this regard was harmless.

*    *    *

For the foregoing reasons, we AFFIRM the district court's judgment.