# Patrick Lecours and Elizabeth A. Peters v. Nationwide Mutual Insurance Company, James A. Mullen, Individually and d/b/a Mullen Insurance Agency, and David Schramm

[657 A.2d 177]

No. 93-558

Present: Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed January 6, 1995

*Alan D. Overton* of *Kolvoord, Overton & Wilson,* Essex Junction, for Plaintiffs-Appellants.

*Samuel Hoar, Jr.* and *Shapleigh Smith, Jr.* of *Dinse, Erdmann & Clapp,* Burlington, for Defendants-Appellees.

**Johnson, J.** Plaintiffs appeal from a judgment of the Chittenden Superior Court declaring that plaintiff Patrick Lecours directed reduction of his uninsured and underinsured motorist (UM) coverage with defendant Nationwide Mutual Insurance Company (Nationwide) to the statutory minimum. We affirm.

On August 19, 1992, plaintiff Elizabeth A. Peters was severely injured when Lecours's Bronco, which she was driving, was struck head-on by an oncoming vehicle whose driver had liability limits of only $20,000/$40,000, well below Peters's damages from the accident. Lecours made a claim against Nationwide for the excess under his UM coverage, and filed the present declaratory judgment action after Nationwide rejected the claim on grounds that Lecours's UM coverage was the same as that of the driver of the other vehicle. Lecours requested that the reduction in his UM coverage be declared ineffective as a matter of law.

The trial court found that in 1990 Lecours had shifted his automobile coverage to Nationwide to get better rates. Lecours's initial Nationwide policy provided $100,000/$300,000 liability coverage and $100,000/$300,000 UM coverage for his Honda automobile. On November 1, 1991, Lecours called his insurance agent, David Schramm, to advise that he planned to buy a second vehicle and wanted to add it to his policy. Schramm testified that Lecours was interested in reducing the size of the new premium and elected to lower the UM limits in the policy to $20,000/$40,000. On the same day as the call to Schramm, Lecours paid an October 9, 1991 bill from Nationwide, omitting, however, the UM-related premium, which then still reflected the prior $100,000/$300,000 coverage.

Based on the Mullen Agency microfilm records and Schramm's testimony, the court found that the agency entered the reduction in

UM coverage along with the second-vehicle coverage on November 14, 1991, effective November 1, 1991. The court also found that Lecours received a new policy declaration sheet and premium notice setting forth the addition of the Bronco and the change in the UM coverage. One day later, Nationwide sent an additional policy declaration and premium bill, reflecting a small premium reduction. The court found that Lecours did not protest the UM reduction until after the accident some nine months later and that it was more likely than not that he had directed that UM coverage be lowered to the statutory limits. The present appeal followed.

Plaintiffs argue that Nationwide did not prove that Lecours's decision to reduce the UM coverage was informed and hence the court's finding that Lecours had directed the reduction was erroneous. The thrust of plaintiffs' argument is that Nationwide had an obligation under the statute to disclose to plaintiffs the options for UM coverage and the potential consequences of a reduction in coverage. Because Nationwide's agents were unfamiliar with UM requirements, Lecours contends he could not have made a knowing and intelligent decision to reduce coverage.

In reviewing a matter on appeal, we examine the trial court's findings of fact only for clear error. V.R.C.P. 52(a)(2). Factual findings are viewed in a light most favorable to the prevailing party, disregarding modifying evidence. *Mullin v. Phelps*, 162 Vt. 250, 260, 647 A.2d 714, 720 (1994). "A finding will not be disturbed merely because it is contradicted by substantial evidence; rather, an appellant must show there is no credible evidence to support the finding." *Highgate Assocs. v. Merryfield*, 157 Vt. 313, 315, 597 A.2d 1280, 1281 (1991); see also *Kimbrell v. Great American Ins. Co.*, 420 So. 2d 1086, 1088 (Fla. 1982) (question of knowing selection of lower UM coverage is one of fact).

■ The statute at issue is 23 V.S.A. § 941(c), which provides:

> (c) *Unless the policyholder otherwise directs*, the coverages under (a) and (b) of this section for new or renewed policies shall be identical to those provided in the policy selected by the person obtaining said policy but shall be not less than the minimum limits of coverage required under the provisions of section 801 of this title.

(Emphasis supplied.) The burden of proof is properly on the insurer to show that the insured made a knowing rejection of higher UM coverage. See *Auger v. State Farm Mut. Auto. Ins. Co.*, 516 So. 2d

1024, 1026 (Fla. Dist. Ct. App. 1987) ("the burden of proof of the insured's knowing rejection of higher uninsured motorist coverage limits is upon the insurance company"). A lesser requirement would be entirely inconsistent with the broad remedial purpose of the UM statute. See *Monteith v. Jefferson Ins. Co.*, 159 Vt. 378, 381, 618 A.2d 488, 490 (1992) (basic philosophy of UM statute is to put insured in same position as if negligent driver had been as responsible as insured in obtaining liability insurance).

The trial court correctly placed the burden on Nationwide to show that the option of lowering UM coverage was presented to the insured, and that the insured's decision was informed and voluntary. The statute does not require more, and the proof was entirely sufficient on this point. David Schramm testified that when asked about possible ways to save on the policy premium, he reviewed options in a telephone conversation with Lecours, including the option of reducing UM coverage. According to Schramm, Lecours requested that UM coverage be lowered. Lecours's November 1, 1991 premium payment omitting the earlier, higher UM coverage premium corroborated Schramm's testimony. Plaintiffs' alternative interpretations of the evidence were expressly rejected by the findings.

Nevertheless, plaintiffs contend that the insured could not have given a knowing and informed waiver under § 941(c) unless Nationwide had provided an adequate explanation of UM coverage by the agent. See *Johnson v. Concord Mut. Ins. Co.*, 300 A.2d 61, 65 (Pa. 1973) (printed form indicating rejection insufficient where agent failed to explain the type of protection being rejected). They reason that as a prerequisite to claiming a valid, knowing and informed rejection by the insured, the insurance agent must first demonstrate an understanding of Vermont's UM law at the time of the requested reduction and that neither David Schramm nor James Mullen understood the UM statute on November 1, 1991.

Regardless of what the agents understood, the most that can be inferred from the statutory language is that the insured must know that there are options with respect to UM coverage and that the default option is coverage consistent with liability coverage. No other explanation, such as the legislative purpose or advice as to whether to comply with that purpose, is required of the insurance company to make the insured's voluntary election for lower limits more knowing.

Moreover, in this case, the court found that Lecours was not, in fact, uninformed and was not misled. He had enjoyed UM coverage equal

to his liability coverage until November 1, 1991, when he decided to make a change. Lecours knew that he could continue UM coverage at that time with the same limits as his liability limits, knew that he could reduce those limits, expressed the desire to save money on his total premium, asked for such a change, and paid a prior premium in a manner that corroborated other evidence of adequate knowledge and information. These findings were not clearly erroneous.

■ We agree with plaintiffs that the purpose of the statute is to encourage drivers to recognize that it is in their interest to adequately insure themselves against the risk of an accident with an uninsured motorist. According to plaintiffs, such purpose is not furthered by a narrow interpretation of the insurer's burden to inform. There is, however, no support in the statute or the legislative history to expand the insurer's burden, and we are constrained not to rewrite the statute. If there is a better method for effectuating the legislative purpose, we leave it to the legislature to devise.

■ Similarly, we do not agree with plaintiffs that, for a reduction in UM coverage to be effective under § 941(c), we should infer a requirement that a request be in writing. However wise and useful such a provision might be, the requirement of a writing is not contained in the statute and may not be inferred. Although our overall aim is to give effect to the intent of the legislature, we must look first to the plain meaning of the statutory wording. *State v. International Collection Serv., Inc.*, 156 Vt. 540, 542, 594 A.2d 426, 428 (1991).

The statute does not state how the insured should direct the insurer to reduce UM coverage limits. The focus of the issue, however, is less on the manner of directing than on what constitutes proof that the direction has been given. Plaintiffs do not argue that an insured cannot give an oral direction, but rather that, given the position of the insurance company as the party with the greater power to avoid controversy by requiring a writing, no oral variance of a contract or a statute should be permitted as a matter of policy. See *Walker v. Coleman*, 367 So. 2d 395, 397 (La. Ct. App. 1979) (proof of a waiver of statutorily mandated coverage must be in writing to be effective). The opinion in *Walker*, however, may have been influenced by the Louisiana legislature, which amended the UM statute, prior to the court's decision but after the insured's waiver, to require written waivers. *Id.* In any event, we decline to follow *Walker*. We will expand the plain meaning of a statute by implication only when expansion is necessary to make the statute effective. *McAllister v. AVEMCO Ins. Co.*, 148 Vt.

110, 112, 528 A.2d 758, 759 (1987). Under § 941(c), placing the burden of proof on the insurer to demonstrate a knowing and informed waiver satisfies the statutory goals. See *Kimbrell*, 420 So. 2d at 1088 (proof of knowing rejection need not be written); *Grange Ins. Ass'n v. Great American Ins. Co.*, 575 P.2d 235, 238 (Wash. 1978) (insurer must have written or other express communication of rejection from person applying for insurance).

*Affirmed.*