## George Merkel v. Nationwide Insurance Company

[693 A.2d 706]

No. 95-636

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion March 21, 1997

*James A. Dumont* and *Jon M. Groveman*, Law Clerk, of *Keiner & Dumont, P.C.*, Middlebury, for Plaintiff-Appellant.

*Allan R. Keyes* and *John A. Serafino* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant-Appellee.

**Dooley, J.** Plaintiff George Merkel sought a declaration that defendant Nationwide Insurance Company was liable under the underinsured motorist provision of its policy, following plaintiff's 1988 accident with an underinsured driver. The Addison Superior Court granted defendant's summary judgment motion, and plaintiff appealed. He argues that: (1) defendant failed to obtain an effective election to set the underinsured motorist coverage limit at $20,000 per person, so it automatically remained at the liability limit of $100,000

per person; and (2) even if defendant obtained an effective election at the purchase of the policy, it failed to obtain a new reduced-coverage election at the policy's renewal. We affirm.

In 1984 plaintiff purchased a liability policy from defendant, with liability limits of $100,000 per person/$300,000 per accident. Plaintiff elected coverage of $20,000 per person/$40,000 per accident on a form referring to "uninsured" motorist coverage. At the time of purchase, the policy's definition of "uninsured motorists coverage" did not include underinsured motorists. However, a rider sent by defendant to plaintiff in 1985 or 1986 defined an uninsured motor vehicle as

> a motor vehicle with respect to the ownership, maintenance, or use of which either no auto liability bond or insurance policy applies at the time of the accident, or with respect to which the sum of the limits of liability under all auto liability bonds and insurance policies applicable to the accident is less than the limits of this coverage.

After issuance of the policy in 1984, defendant sent plaintiff annual declarations indicating the same uninsured motorist coverage limits, and he remitted his premium payments without questioning these limits or seeking to change them.

In 1988, following several policy renewals, plaintiff was in an accident with a vehicle covered by a liability insurance policy with a $20,000-per-person/$40,000-per-accident liability limit, the same limit as for uninsured motorist coverage in plaintiff's policy. Plaintiff assessed his total losses from the accident at $75,000, recovered $20,000 from the other motorist in the accident, and sought the difference of $55,000 from defendant. Defendant denied plaintiff's claim because the other driver was not underinsured within the definition of the policy. Plaintiff brought the present action, claiming that the form he signed in 1984 related to *un*insured motorist coverage but did not mention or relate to *under*insured motorist coverage, which he never elected to reduce below his own liability coverage limits, and that he never agreed to reduce underinsured motorist coverage at the renewals of the policy.

Defendant moved for summary judgment on grounds that under the language of the policy and under 23 V.S.A. § 941 plaintiff's election to purchase coverage at a lower liability limit applied to both uninsured and underinsured motorist coverage and continued at each policy renewal. The court agreed and granted defendant's motion. This appeal followed.

Under 23 V.S.A. § 941(a), no liability policy may issue or be delivered in Vermont "unless coverage is provided therein . . . for the protection of persons insured thereunder who are legally entitled to recover damages, from owners or operators of uninsured, underinsured or hit-and-run motor vehicles . . . ." 23 V.S.A. § 941(c) states:

(c) Unless the policyholder otherwise directs, the coverages under (a) and (b) of this section for new or renewed policies shall be identical to those provided in the policy selected by the person obtaining said policy but shall be not less than the minimum limits of coverage required under the provisions of section 801 of this title.

Plaintiff argues first that these provisions create "separate and distinct" categories of coverage for uninsured and underinsured motorists and that to be valid, waivers of the statutory limits in § 941(c) had to be separate for uninsured and underinsured coverages. Thus, plaintiff argues that his election to reduce his uninsured motorist coverage to $20,000 per person had no effect on his underinsured motorist coverage, which remained at the limit of his liability coverage, $100,000 per person.

■ This is a question of statutory construction. Our goal in interpreting a statute is to discern and implement the intent of the Legislature. See *Lane v. Town of Grafton*, 166 Vt. 148, 151, 689 A.2d 455, 456 (1997). We consider the purpose of the statute and look to "the broad subject matter of the law, its effects and consequences, and the reason and spirit of the law." *Id.* at 151, 689 A.2d at 456.

■ The requirement that liability policies include uninsured motorist coverage dates from 1968. In 1980, the Legislature amended the law to require additional coverage with respect to operators of underinsured or hit-and-run motor vehicles. The Legislature imposed this additional mandatory coverage in order to eliminate the anomaly that insureds were better off when they were hit by an uninsured driver than when they were hit by a driver with very little liability coverage. As we explained in *Monteith v. Jefferson Ins. Co.*, 159 Vt. 378, 386, 618 A.2d 488, 492 (1992) (quoting *State Farm Mut. Auto. Ins. Co. v. Hancock*, 295 S.E.2d 359, 360 (Ga. Ct. App. 1982)):

"[W]hile a motorist insured over the minimum coverage could obtain full redress to the maximum of his policies when the tortfeasor was uninsured, he was denied any recovery of

excess damages through his own coverage when the tortfeasor was only minimally insured. This created the anomalous situation whereby a prudent motorist with maximum insurance coverage was actually penalized if injured by a tortfeasor who was in compliance with the minimum no fault coverage requirements."

Put another way, underinsured motorist coverage is simply a different point on an undivided continuum between the amount of the insured's own liability coverage and any lesser amount of coverage of the other driver.

The legislative purpose is generally inconsistent with plaintiff's argument that uninsured motorist coverage and underinsured motorist coverage are separate and distinct. Moreover, the drafting of the section does not support such separation. Despite the addition of mandatory coverage for underinsured and hit-and-run motorists, the Legislature retained the title of the statutory section as "Insurance against uninsured motorists." The point is reinforced in § 941(f), which states that "a motor vehicle is underinsured to the extent that its personal injury limits of liability at the time of an accident are less than the limits of *uninsured motorists coverage* applicable to any injured party legally entitled to recover damages under said *uninsured motorist coverage*." (Emphasis added.) Nor does the coverage-limit-waiver provision, § 941(c), explicitly require separate waiver of coverage limits for uninsured, underinsured, and hit-and-run coverage. See *McCoy v. Dairyland Ins. Co.*, 808 P.2d 180, 182 (Wash. Ct. App. 1991) (rejection of underinsured motorists bodily injury coverage constituted rejection of hit-and-run coverage, and no separate rejection was required). At best, plaintiff has to derive this requirement by implication from its basic position that uninsured motorist and underinsured motorist coverage are separate.

Our construction of the statute is also affected by the fact that plaintiff is relying on a technicality, with no apparent purpose. Plaintiff has not suggested that if he were offered different coverage limits for uninsured motorist and underinsured motorist coverage, he would have taken them. More important, we can see no reason why any insured would opt for different coverage limits in those circumstances. Thus, plaintiff seeks to prevail on the basis that he was not offered an irrational choice.

■ We recently held in *Lecours v. Nationwide Mut. Ins. Co.*, 163 Vt. 157, 159, 657 A.2d 177, 179 (1995), a case factually indistinguishable from this one, that § 941(c) requires that the insurance carrier show

only that the insured "made a knowing rejection of higher UM [uninsured] coverage." In reaching that decision, we did not consider whether separate limits could be chosen for uninsured and underinsured motorist coverage because neither party raised this possibility. On reconsideration, in light of plaintiff's new argument here, we conclude that the *Lecours* ruling is correct and should not be modified. The carrier may require that the insured choose one UM limit for uninsured, underinsured, and hit-and-run motorist coverage.

■ Plaintiff argues that even if the *Lecours* standard applies to underinsured motorist coverage, the trial court could not determine that he made a knowing rejection of higher underinsured motorist coverage as a matter of law so as to grant summary judgment for defendant. Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law, after giving the benefit of all reasonable doubts and inferences to the nonmoving party. See *Select Design, Ltd. v. Union Mut. Fire Ins. Co.*, 165 Vt. 69, 72, 674 A.2d 798, 800 (1996). In this case, plaintiff concedes that the *Lecours* waiver standard was met as a matter of law as to uninsured motorist coverage. He argues only that the evidence is conflicting on whether he made a knowing waiver of higher underinsured motorist coverage limits. Since we have held that the insurer may properly treat uninsured motorist and underinsured motorist coverage as a package and require the insured to choose a common limit, this argument necessarily fails. Only one limit was applicable, and plaintiff knowingly chose it. Summary judgment was appropriate.

Plaintiff's second argument is that the election required by § 941(c) must be made at each policy renewal. He relies particularly on the inclusion of "new or renewed policies" in the direction of § 941(c), arguing that the Legislature must have intended that uninsured motorist coverage limits revert to the liability policy limits unless "the policyholder otherwise directs" at each policy renewal. As with plaintiff's first argument, the statutory language does not explicitly support plaintiff's position.

Drawing on the legislative history, defendant has offered a more persuasive analysis of the statutory language. See *In re Lunde*, 166 Vt. 167, 169, 688 A.2d 1312, 1314 (1997) (legislative history useful where there is doubt as to meaning of statutory language). The waiver provision of § 941(c) was added in 1983, fifteen years after the Legislature had added mandatory uninsured-motorist coverage and three years after it had expanded this coverage to underinsured and

hit-and-run motorists. After a version of the waiver provision passed the Senate, the Vermont Department of Motor Vehicles expressed concern that insurance carriers would be unable to implement it in the middle of a policy period and offered the language making it effective for "new or renewed policies," so carriers could delay implementation to that point. See Statement of Thomas McCormick on S.75 to the House Transportation Committee, at 7-8 (March 30, 1983). The language was adopted in the House of Representatives and retained in conference. See S.75, Vt. House Jour. 519-20 (April 14, 1983); S.75, Vt. Sen. Jour. 459 (April 19, 1983). We agree with defendant's position that the specific mention of "renewed policies" was to provide an effective date for the requirements of the section and not to require a new direction at each policy renewal.

█ The general rule around the country has been that any waiver of uninsured-motorist coverage in an initial policy is extended to the renewal policy. See 8C J. Appleman, Insurance Law and Practice § 5073.55, at 131 (1981) ("The tendency is to find that a straight renewal need not require a separate rejection . . . ."); 12A Couch on Insurance, Second § 45:627, at 65 (1981) ("Generally, upon renewal, waiver in the prior policy is extended to the subsequent renewal policy."). Although statutes generally deal with the question more specifically than § 941(c), the decisions from other states on waivers of uninsured motorist coverage or coverage limits are usually consistent with this rule. See, e.g., *Insurance Co. of North America v. MacMillan*, 945 F.2d 729, 731 (4th Cir. 1991) (Virginia law) (rejection of UM coverage in one year excuses need for rejection in subsequent year); *Petrou v. South Carolina Ins. Co.*, 435 So. 2d 316, 317 (Fla. Dist. Ct. App. 1983) (no new rejection or selection of UM coverage required if policy is merely renewal policy); *National Union Fire Ins. Co. v. Johnson*, 357 S.E.2d 859, 860 (Ga. Ct. App. 1987) (insured need not again reject uninsured motorist coverage when policy is renewed for earlier election to prevail); *Carlson v. Mutual Service Ins.*, 494 N.W.2d 885, 888 (Minn. 1993) (agent had no duty to offer UM coverage to insureds upon renewal, where policy application showed that coverage had been offered and rejected when policy was originally purchased); *Goode v. Daughtery*, 694 S.W.2d 314, 319 (Tenn. Ct. App. 1985) (once insured has elected lower limits of UM coverage, insurer need not include rejected UM coverage in renewal of policy unless requested by insured). Contra *American Universal Ins. Co. v. Russell*, 490 A.2d 60, 62 (R.I. 1985) (UM coverage must be offered at

each policy renewal, even though insured originally waived such coverage).

We cannot conclude that § 941(c) requires a new direction to set uninsured motorist coverage limits at each policy renewal. In this case, plaintiff received a clear specification of the coverage limits and the premium charges at each renewal. He had the opportunity to make whatever changes he desired. In the absence of action by him, defendant kept his uninsured motorist coverage at the minimum level.

*Affirmed.*