**Danielle Lee DUSHARM, Plaintiff,**

v.

**NATIONWIDE INSURANCE COMPANY, Defendant.**

**No. 2:97–CV–371.**

United States District Court, D. Vermont.

April 14, 2000.

354

Marikate Ellen Kelley, Ward, Kelley &
Babb, South Burlington, VT, for Danielle
Lee Dusharm, plaintiff.

Michael John Gannon, Susan J. Flynn,
Affolter, Gannon & Flynn, Burlington, VT,
for Nationwide Insurance Company, defendant.

## OPINION AND ORDER

SESSIONS, District Judge.

This is a lawsuit brought by Plaintiff
Danielle Lee Dusharm ("Danielle," "Ms.
Dusharm") against Nationwide Insurance
Company ("Nationwide") for breach of insurance contract. Ms. Dusharm moved for
summary judgment, and Nationwide has
filed an opposition and cross motion for
summary judgment. For the reasons that
follow, Dusharm's Motion for Summary
Judgment is GRANTED (paper 54) and
Nationwide's Cross–Motion for Summary
Judgment is DENIED (paper 56 and 58).

### I. *Factual Background*

Plaintiff Danielle Dusharm was one of
two passengers in a car accident on October 13, 1994. The car was driven by her
friend, Erin Malloy, who struck a vehicle
operated by Susan Lathrop, causing Ms.
Lathrop severe injuries which rendered
her comatose. Ms. Malloy and her passengers were also injured in the accident.

Plaintiff is the daughter of Catherine
Lapierre and Robin Dusharm. Ms. Dusharm's parents are divorced, and Ms. Lapierre had custody at the time of the accident. Both parents had independent
insurance policies with Nationwide. Ms.
Dusharm lived with her mother in St. Albans until July 1994. After a disagree-

ment with her mother, Danielle began staying with her father, taking one suitcase of clothing to his home in Hinesburg.

Although Mr. Dusharm's home became her primary place of residence and she began school there in the fall, she kept her personal belongings in her bedroom at her mother's home, including the majority of her clothing and her furniture. Ms. Dusharm offered in affidavit that she did not indicate in any way that the move to her father's home was permanent. She stayed overnight with her mother at least two weekends per month, and made several other visits to St. Albans through the course of the month. Ms. Lapierre claimed Danielle as a dependant on her 1994 taxes, and Danielle continued to visit and keep her personal belongings with her mother until her mother moved to a smaller apartment several months after the accident.

At the time of the accident, Ms. Lapierre lived with James Thacker, a Nationwide policyholder. His policy, number 51D540596, had liability coverage of $100,000 per person/$300,000 per incident and uninsured motorist/underinsured motorist ("UM/UIM") coverage of $20,000/$40,000. Mr. Thacker elected in writing to have his UM/UIM limits lower than his liability limits when he initiated coverage by Nationwide. Ms. Lapierre later became a named policyholder on Mr. Thacker's insurance plan. The inclusion of Ms. Lapierre on the insurance contract was executed in a phone conversation between Ms. Lapierre and a Nationwide insurance agent at Mullen Agency whose identity is unknown. Defendant's records show that Ms. Lapierre became a named policyholder in February 1994; Defendant's records also show that her two cars were added to the policy by James Thacker in July 1993, prior to her inclusion as a policyholder. Ms. Lapierre claims that Nationwide did not obtain direction from her regarding setting UM/UIM limits below the liability limits, and Nationwide does not dispute this claim.

Ms. Dusharm brought this action in Chittenden Superior Court by filing a Complaint for Declaratory Judgment on October 15, 1997. The matter was removed to this Court on the basis of diversity of citizenship. In August 1998, Plaintiff amended her complaint, adding a claim for additional coverage under the automobile insurance policy between defendant and her mother based on the failure of the insurer to obtain informed and voluntary election for the UM/UIM limits to be lower than the liability limits as required by 23 V.S.A. § 941. A claim was also added alleging defendant's failure to pay Family Compensation due under the terms of that contract.

In July 1998, the parties filed cross motions for summary judgment. By agreement of the parties, the issue of informed consent for lower limits under the Thacker/Lapierre insurance policy was not resolved by the July 1998 motions. For purposes of those summary judgment motions, Defendant accepted that Ms. Dusharm was insured under both parents' policies. However, Nationwide has contested Ms. Dusharm's status as an insured under her mother's policies for any other purpose and has not paid Family Compensation to Ms. Dusharm under the terms of her mothers' policy. Nationwide has not contested Ms. Dusharm's coverage under her father's policy, and has paid Family Compensation under that policy.

This Court granted Plaintiff's Motion for Summary Judgment and denied Defendant's Motion for Summary Judgment by Opinion and Order dated April 28, 1999. Nationwide filed a Notice of Appeal on June 28, 1999, but the matter returned to this Court by Stipulation Withdrawing Appeal Ordered August 23, 1999, as the Opinion and Order dated April 28, 1999 did not resolve all the issues between the parties.

The remaining issues are whether Ms. Dusharm is an insured under her mother's automobile insurance policy, and whether Defendant was required to obtain informed and voluntary election for the unin-

sured limits to be lower than the liability limits on the policy with Plaintiff's mother. Specifically, Plaintiff first claims that her mother's policy has no residence requirement; in the alternative, if a residence requirement is read into the policy, Plaintiff argues that she meets that requirement. Second, Plaintiff argues Nationwide failed to receive approval for UM/UIM limits lower than liability limits as required by 23 V.S.A. § 941, voiding the lower UM/UIM limits.

Defendant counters the policy has a residency requirement that Ms. Dusharm did not meet at the time of the accident. They further argue that the lower UM/UIM coverage in the Thacker/Lapierre policy was attained without violation of 23 V.S.A. § 941, and in the alternative, at least requires an evidentiary hearing to resolve the disputed issues surrounding Ms. Lapierre's involvement with decisions about UM/UIM coverage limits under the Nationwide policy.

## II. *Discussion*

### A. Standards

Summary Judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *Alexander & Alexander Services, Inc. v. These Certain Underwriters at Lloyd's, London, England,* 136 F.3d 82, 86 (2d Cir.1998) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The movant bears the burden of showing that no genuine issue of material fact exists. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d Cir.1994) (citing *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975)). All ambiguities must be resolved and all inferences from the facts drawn in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In sum, "[t]he court must draw all reasonable inference in favor of the non-moving party and only grant summary judgment for the moving party if no reasonable trier of fact could find in favor of the non-moving party." *Vermont Gas Systems, Inc. v. United States Fid. & Guar. Co.,* 805 F.Supp. 227, 231 (D.Vt.1992) *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, "conclusions of law or unwarranted deductions of fact are not admitted." *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994).

Jurisdiction of this matter is based on diversity, 28 U.S.C. § 1332(a)(1). The Court applies Vermont law to the substantive issues. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). As the matters before the Court has not yet been addressed by the Vermont Supreme Court, this Court must determine the issues as it believes that body would determine them. *See Mainline Tractor & Equip. Co. v. Nutrite Corp.,* 937 F.Supp. 1095, 1101 (D.Vt.1996); *Paquette v. Deere and Co.,* 168 Vt. 258, 719 A.2d 410, 413 (1998).

"The cardinal principle for the construction and interpretation of insurance contracts—as with all contracts—is that the intentions of the parties should control." *Newmont Mines Ltd. and Esso Resources Canada Ltd. v. Hanover Ins. Co.,* 784 F.2d 127, 135 (2d Cir.1986). However, the Vermont Supreme Court held in *Valente v. Commercial Ins. Co.,* 126 Vt. 455, 459, 236 A.2d 241 (1967) that "[i]t is a fundamental rule that a policy of insurance must be construed liberally in respect to the person insured and strictly with respect to the insurer." When it is impossible to determine the exact meaning of an ambiguous provision, the Court should employ the rule of *contra proferentum,* which construes the ambiguity against the drafter of the insurance policy. "It is a general rule of construction in Vermont that a doubtful provision in a written instrument is construed against the party responsible for drafting it." *Trustees of Net Realty Holding Trust v. AVCO Fin. Servs. of Barre, Inc.,* 147 Vt. 472, 520 A.2d 981, 983

(1986) (citing *Page v. Lyle H. Hall, Inc.*, 125 Vt. 275, 214 A.2d 459, 463 (1965)).

### B. Ms. Dusharm's Residence

The Vermont Supreme Court has not addressed the issue of the residence of children of divorced parents for insurance purposes. However, the Rutland Superior Court has found that a teenage child who resides primarily with one parent is also a resident of the other parent's household due to regular overnight visits (defined as at least one per month), and evidence of intention to maintain continuing ties with the household of the visited parent. *Celetano v. Champlain Casualty Co.*, Rutland Sup.Ct.Doc. No. So568–94 RcC (April 26, 1995). The Nationwide policy defines "relative" as a "one who regularly lives in your household, related to you by blood, marriage, or adoption."

It is true that Danielle's primary place of residence at the time of the accident was with her father. However, it is clear that she also regularly resided with her mother. The fact that her mother retained custody, and that Danielle maintained and frequently stayed in her bedroom at her mother's home, makes clear that Danielle was a relative in residence for purposes of her mother's insurance policy.

Ms. Dusharm also argues that her residence is irrelevant to coverage issues, as the relevant provision of Ms. Lapierre's policy was replaced by a version which did not include a requirement that the covered relative be a resident in the home of the policyholder. The policy at the time of the accident reads:

"We will pay compensatory damages, [ . . . ] which are due by law to [the policyholder(s) ] or a relative from the owner or driver of an uninsured or underinsured motor vehicle because of bodily injury suffered by [the policyholder(s) ] or a relative [ . . . ]"

As Ms. Dusharm meets the higher "residency requirement" test for coverage under her mother's policy, the Court need not address whether the residence requirement itself was removed by superseding policy language. Thus, Ms. Dusharm is an insured under the Lapierre/Thacker contract.

### B. Requirements under 23 V.S.A. § 941

While the Vermont Supreme Court has held that new direction from policyholders to retain lower UM/UIM is not required at each policy renewal, the Court has not yet addressed the issue of whether such direction is required when a new policyholder is added. *Merkel v. Nationwide Insurance Company*, 166 Vt. 311, 693 A.2d 706 (1997). At the time of the issuance of Ms. Lapierre's Nationwide policy, the relevant section of 23 V.S.A. § 941 read:

(c) unless the policyholder otherwise directs, the coverage under (a) and (b) of this section for new or renewed policies shall be identical to those provided in the policy selected by the person obtaining said policy [ . . . ]

Section (a) relates to coverage in uninsured, underinsured, or hit and run incidents, and coverage under Section (b) is for bodily injury. If (a) and (b) are found to have been set at different rates without the express consent of the policyholder, the discrepancy is void and the limits are determined to be set at the higher, bodily injury level.

The direction to decrease uninsured and underinsured limits need not be in writing. *Lecours v. Nationwide Mut. Insurance Co.*, 163 Vt. 157, 657 A.2d 177 (1995). However, the burden of proof is on the insurer to show that the insured made a knowing rejection of higher UM/UIM coverage. *Id.* at 159, 657 A.2d 177 (citing *Auger v. State Farm Mut. Auto. Ins. Co.*, 516 So.2d 1024, 1026 (Fla.Dist.Ct. App.1987)).

Vermont law requires insurance companies to provide equal levels of coverage for UM/UIM and bodily injury unless otherwise directed by the policyholder. Ms. Lapierre is a policyholder. Thus, it is

clear that Nationwide was required to make the UM/UIM coverage identical to the liability insurance unless Ms. Lapierre otherwise directed. Although Ms. Lapierre does not remember many of the details of the conversation with the insurance agent who enrolled her as a named policyholder on Mr. Thacker's plan, she stated in deposition that she requested the "standard" coverage. Thus, the burden shifts to Nationwide to assert facts that bear out that Ms. Lapierre requested the lower UM/UIM limits. No such facts have been asserted by Nationwide.

Nationwide claims that its records indicate that no cars were added to the policy at the time of Ms. Lapierre's inclusion as a named policyholder in Mr. Thacker's policy. Rather, Mr. Thacker had added Ms. Lapierre's cars to his policy at an earlier date, and Nationwide was under the impression at that time that the cars were owned by Mr. Thacker, not by Ms. Lapierre. Nationwide therefore argues that it was under no obligation to consult Ms. Lapierre about the terms of the car insurance policy when she signed on, as they were under the impression that she was not making car insurance decisions about her own vehicles.

For the purposes of summary judgment, the Court construes these facts most favorably to Nationwide. However, Nationwide's impression of Ms. Lapierre's status as a car owner does not impact on her status as a named policyholder of a car insurance policy. Neither does the addition of cars to the policy at the time Ms. Lapierre became a named policyholder, nor the lack thereof, effect her status as a policyholder. This is particularly salient given that UM/UIM coverage is for the protection of persons and not vehicles. *Monteith v. Jefferson Ins. Co.*, 159 Vt. 378, 381, 618 A.2d 488 (1992) (citing 23 V.S.A. § 941(a)).

Furthermore, Nationwide itself asserted in their statement of undisputed facts that "[i]t is not the Mullen Agency's practice or policy to add an additional named insured to a policy unless the additional insured claims an ownership interest in the vehicles insured by the policy. (Affidavit of Trudy Meunier, See Exhibit 5)." Ms. Lapierre was the owner of both vehicles under the policy, and Nationwide would not have added her as a named policyholder without such ownership interest in the vehicles. Therefore, for purposes of 23 V.S.A. § 941, Ms. Lapierre is a policyholder within the meaning of the statute.

Even more compelling is Nationwide's admission in its Statement of Undisputed Facts that "[i]t is the Mullen Agency's practice and procedure to review coverages when additional vehicles are added to a policy, rather than when an additional named insured is added." Although this may be the practice of Mullen Agency, this practice is unlikely to secure consent from each and every policyholder for lowered UM/UIM coverage, as required by 23 V.S.A. § 941. Mr. Thacker's written consent, then, does not bear upon Nationwide's obligation to seek specific instruction from Ms. Lapierre regarding lowered UM/UIM limits. The election of lower UM/UIM limits by Mr. Thacker prior to Ms. Lapierre's signing on as a Nationwide policyholder are not binding on her or her daughter. Ms. Lapierre's independent request for lower limits was required.

Again, Ms. Lapierre claims she requested the standard coverage when she became a policyholder. The burden then falls on Nationwide to show otherwise. Nationwide offers no evidence to contradict Ms. Lapierre's assertion. Nationwide simply offers that in deposition, after asserting that she requested the standard coverage, she stated that she did not want to pay more than she had to for coverage. The deposition transcript reads as follows:

Q. Do you recall whether the agent discussed with you the option of having lower uninsured limits than liability limits?

A. If he did, I still would have said whatever the standard is because I didn't want to be under and I didn't really want to be paying more than

I had to. It would have been just the standard.

Ms. Lapierre's answer in deposition does not offer evidence regarding her choice for lower coverage. Rather, she states twice that she desired standard coverage, and the she didn't "want to be under." Nationwide offers no evidence that she did not request the standard coverage, or that she agreed to lower UM/UIM limits. Thus, as to coverage limits, Ms. Dusharm is entitled to judgment as a matter of law.

Finally, Nationwide claims that since Plaintiff Danielle Dusharm was not a named insured or policyholder, her consent under § 941(c) was not required and the policy is valid. This argument clearly misstates the policy terms, which allow for coverage of the policyholder's child. Danielle Dusharm's rights under the policy flow from Catherine Lapierre. Ms. Dusharm's consent for the lowered limits is not at issue here, and Plaintiff concedes that her consent is not required. Nationwide's failure to obtain Plaintiff's mother's consent for lowered UM/UIM coverage is the only relevant factor for the purposes of this policy and 23 V.S.A. § 941. Lacking Ms. Lapierre's consent for the lowered limits, the discrepancy in UM/UIM and liability limits is void. Thus, the UM/UIM coverage must equal to the liability coverage, in this case $100,000/$300,000, and summary judgment on behalf of Plaintiff is granted.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment (paper 54) is hereby GRANTED; Defendant's Motion for Summary Judgment (paper 56 and 58) is DENIED.