# STATE OF VERMONT

# ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re Champlain Marina, Inc., Dock Expansion | } | Docket No. 28-2-09 Vtec |
| | } | |

## Decision on Multiple Motions

This appeal arises out of a decision by the Vermont Agency of Natural Resources ("ANR"), granting conditional approval to Champlain Marina, Inc. ("Applicant"), to amend its permit to lengthen one of its existing docks in the Spaulding Bay area of Lake Champlain in Colchester and to add additional finger docks to the new dock extension. A group of neighbors ("Neighbors") filed a timely appeal of that decision.[1]

Three motions are currently pending before the Court. ANR has filed a motion requesting clarification of Neighbors' Statement of Questions, and Neighbors have consented to do so and have responded with a Revised Statement of Questions. Applicant has filed a motion to determine that there is only one appellant in this case and a motion to dismiss the appeal for lack of standing, and Neighbors have responded in opposition to both of these motions. We address each motion in turn.

## I.      ANR's Motion to Clarify Neighbors' Statement of Questions

Neighbors' initial Statement of Questions raised a number of concerns that Neighbors had with ANR's decision, but (according to ANR) Neighbors failed to identify any statutory or other legal basis for their arguments. Thus, ANR filed a motion requesting clarification of Neighbors' Statement of Questions. See V.R.E.C.P. 5(f) ("The statement is subject to a motion to clarify or dismiss some or all of the questions.").

ANR correctly notes that "the statement of questions should be a short, concise and plain statement that will establish the scope of the appeal, and ultimately, the scope of the issues for trial." Appeal of Rivers Dev., LLC, Nos. 7-1-05 Vtec & 68-3-07 Vtec, slip op. at 14 (Corrected)

---

[1] Applicant is represented in this appeal by Craig Weatherly, Esq.; ANR is represented by Michael Steeves, Esq.; and Neighbors, who initially appeared in this proceeding representing themselves, are now represented by Steve Reynes, Esq. (except for Robert A. Metcalf, who still represents himself, but is yet to indicate any plans to participate in these proceedings). The Neighbors represented by Attorney Reynes are Thomas A. and Margaret A. Battey; David R. Wood; Kenneth Brown; Marlene Williamson; Laurel Butler; Deborah Rabideau; Wes Weaver; Dennis Reichardt; Linda and Sam Jackman; Renae Hance; John P., Susan R., Lindsey, and John R. Louchheim; Kathryn J. and Stephen C. DePasquale, Jr.; Beverly I. and Gordon A. Watson; Bruce and Michelle Bouchard; Joseph H. Boyd; Ann Burzynski; Neil Metzner; Frank Shea; and Catherine Rush.

(Vt. Envtl. Ct. Jan. 18, 2008) (Durkin, J.); accord In re Unified Buddhist Church, Inc., Indirect Discharge Permit, No. 253-10-06 Vtec, slip op. at 5 (Vt. Envtl. Ct. May 11, 2007) (Wright, J.) ("The other parties are entitled to a statement of questions that is not vague or ambiguous, but is sufficiently definite so that they are able to know what issues to prepare for trial.").

Rather than disputing ANR's motion, Neighbors have consented to it and have filed a Revised Statement of Questions, which includes citations to specific legal authorities.

We have previously noted that the decision to grant a motion to amend a statement of questions depends upon whether the motion will "prejudice the other parties." Appeal of Town of Fairfax, No. 45-3-03 Vtec, slip op. at 5 (Vt. Envtl. Ct. June 13, 2005) (Wright, J.); accord Appeal of Osherenko, No. 79-5-04 Vtec, slip op. at 6 (Vt. Envtl. Ct. June 22, 2005) (Durkin, J.). To date, neither ANR nor Applicant has objected to the Revised Statement of Questions (other than Applicant's previously filed motion to dismiss), and we find no prejudice to them resulting from the granting of the motion to clarify. We therefore **GRANT** ANR's motion to require that Neighbors' clarify their Statement of Questions, and we note that Neighbors' Revised Statement of Questions now controls the scope of this appeal.

## II.    Applicant's Motion to Determine that There Is Only One Appellant

Applicant has filed a motion asking this Court to determine that there is only one appellant in this case. At the time that Applicant filed this motion, Applicant was faced with the burdensome task of sending copies of all of its legal filings to each of the original 31 appellants. Fortunately, subsequent developments have largely mooted this issue. Three appellants have withdrawn from the case, and of the 28 that remain, 27 of them are now represented by Attorney Reynes. Only Robert A. Metcalf remains as an unrepresented appellant, and he is yet to take an active role in these proceedings. Thus, Applicant no longer needs to incur the expense of 31 individual mailings for each filing; rather, only ANR, Attorney Reynes, and Mr. Metcalf are currently entitled to receive individual copies of Applicant's filings. For so long as Attorney Reynes remains the attorney of record for 27 of the 28 named Neighbors, we decline to require Neighbors as a whole to nominate an individual spokesperson.[2]

---

[2]  If all of the appellants had remained unrepresented in this appeal, the Court could have exercised its discretion to ask Neighbors to appoint a representative to receive documents and distribute them to other appellants. The Court has done so in the past when an appeal involves a large number of unrepresented parties who have a common interest or neighborhood. In this case, however, the appearance of Attorney Reynes serves a similar function, and Applicant is no longer faced with the burdensome task of copying and mailing documents to an inordinate number of individuals.

Applicant places great weight on the fact that Neighbors have only paid one entry fee, suggesting that multiple fees are required if each wishes to be treated as an individual appellant. We disagree. It has long been the practice of this Court to allow multiple parties to join together in the filing of a single appeal with a single payment. We find support for this practice in our Rule 5(b)(3), which states that "[t]he notice of appeal must specify the party or parties taking the appeal." V.R.E.C.P. 5(b)(3) (emphasis added). Thus, Neighbors did not violate any procedural rules by filing an appeal together with a single payment. We therefore **DENY** Applicant's motion to require each of these common appellants to pay a separate filing fee.

Applicant also expresses what appear to be legitimate concerns about whether individual Neighbors will attempt to raise separate issues, pose individual interrogatories, or schedule separate depositions. While these concerns of what might be asserted in the future appear legitimate, there is no evidence in the record before us that any of the individual Neighbors, including Mr. Metcalf (who represents himself), is asserting individualized claims or discovery requests. Neighbors filed a single Statement of Questions and are now bound by the limitations that their Statement of Questions imposed upon the legal issues that may be raised in this appeal. See, e.g., Vill. of Woodstock v. Bahramian, 160 Vt. 417, 424 (1993); V.R.E.C.P. 5(f). They chose to file, collectively, a single Notice of Appeal and pay a single filing fee. To the extent that Applicant believes that one of more of these Neighbors is acting beyond the scope of their collective filings, Applicant may present their concerns once such actions have been taken. Before then, this Court is disinclined to provide an advisory opinion.

Applicant has also expressed concern that the existence of an unrepresented appellant— who may choose not to participate in Court proceedings or in mediation directed by the Court— will frustrate settlement negotiations or other efforts to bring finality to this matter. Again, we feel compelled to refrain from rendering an advisory opinion, and we decline to address this issue until the complained-of actions occur. To the extent that a party declines to participate in Court proceedings when invited or directed to do so, this Court has a variety of tools at its disposal to respond to such actions. We reserve the right to exercise the appropriate discretion when such circumstances arise, but decline to do so when such actions have not yet been taken.

## III. Applicant's Motion to Dismiss for Lack of Standing

Applicant has filed a motion to dismiss on the grounds that Neighbors lack standing to raise the issues that they have presented in this appeal. The Vermont Supreme Court has

recognized that standing is a threshold issue affecting whether a party has the right to bring an appeal:

> Vermont courts have subject matter jurisdiction only over actual cases or controversies involving litigants with adverse interests. One element of the case or controversy requirement is that plaintiffs must have standing, that is, they must have suffered a particular injury that is attributable to the defendant and that can be redressed by a court of law. Without standing, the court has no jurisdiction . . . . Because standing is a necessary component of the court's subject-matter jurisdiction, it cannot be waived, and its absence can be raised at any time.

Bischoff v. Bletz, 2008 VT 16, ¶ 15, 183 Vt. 285 (internal citations and quotations omitted).

Similarly, this Court has recognized that "a party's standing or party status may be raised at any time." 114 Coll. St. Permit Amendment, No. 227-09-06 Vtec, slip op. at 2 (Vt. Envtl. Ct. Dec. 14, 2007) (Wright, J.).[3]

The doctrine of standing has both constitutional and prudential components. Warth v. Seldin, 422 U.S. 490, 498 (1975); Hinesburg Sand & Gravel Co. v. State of Vt., 166 Vt. 337, 341 (1997). The constitutional components are "(1) injury in fact, (2) causation, and (3) redressability." Hinesburg, 166 Vt. at 341. The prudential components "include the general prohibition on a litigant's raising another person's legal rights, the rule against adjudication of generalized grievances, and 'the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" Id. (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)).

Although a legislative body cannot dispose of the constitutional components of standing, it is free to alter—and even eliminate—the prudential components of standing. Bennett v. Spear, 520 U.S. 154, 163–66 (1997). For instance, the Bennett Court held that Congress' use of the phrase "any person" in the citizen suit provision of the Endangered Species Act had "the obvious

---

[3] Procedurally speaking, "this Court does not require appellants to file the type of in-depth civil complaint that would ordinarily assert a basis for standing." In re Verizon Wireless Barton Permit, No. 133-6-08 Vtec, slip op. at 9 (Vt. Envtl. Ct. May 20, 2009) (Durkin, J.). Thus, although the U.S. Supreme Court has recently noted in a 5-4 decision that plaintiffs cannot submit documents to remedy standing defects "retroactively," Summers v. Earth Island Inst., 129 S. Ct. 1142, 1150 n.* (Mar. 3, 2009), we do not view Summers as a bar to analyzing the documents that Neighbors have submitted here. Rather, because Neighbors bring this appeal under 10 V.S.A. § 8504(a), this Court is directed to "automatically accord[]" them party status. V.R.E.C.P. 5(d)(2). As a result, "the burden then falls upon other parties or the Court itself" to challenge party status or standing. Verizon, No. 133-6-08 Vtec, slip op. at 9.

In this appeal, Applicant has challenged Neighbors' standing by filing a motion to dismiss. In response to this challenge, Neighbors have filed a number of documents to support their claim of standing. Neighbors' documents are therefore filed precisely in accordance with our procedural rules; we do not find them to be filed "retroactively." Summers, 129 S. Ct. at 1150 n.*. Further, Summers only bars the submitting of documents "[a]fter the [trial] Court ha[s] entered final judgment." Id. We are, of course, not yet at that stage in these proceedings.

4

purpose" of "encourag[ing] enforcement by so-called 'private attorneys general.'" Id. at 165. As a result, standing under the Endangered Species Act, like standing under the Civil Rights Act of 1968, is "expanded to the full extent permitted under Article III" of the Constitution. Id. (citing Trafficante v. Metro. Life Ins. Co., 409 U.S. 205 (1972)).

The statute at issue in this case grants standing to "any person aggrieved by an act or decision of [ANR]." 10 V.S.A. § 8504(a).[4] The statute defines a "person aggrieved" as "a person who alleges an injury to a particularized interest protected by the provisions of law listed in section 8503 of this title, attributable to an act or decision by [ANR] . . . that can be redressed by the environmental court or the supreme court." 10 V.S.A. § 8502(7). This definition incorporates all three of the constitutional requirements of standing—injury in fact, causation, and redressability—as well as the prudential requirements that an injury be particularized (not merely a generalized grievance) and fall within the zone of interests.

We first note that the requirements of causation and redressability are easily met in this case. All of the parties agree that Applicant needs a permit amendment to extend its dock. See 29 V.S.A. § 403. ANR granted that permit amendment—a decision that (if upheld) could lead to increased boat traffic that Neighbors assert could harm their lake-side properties. Thus, Neighbors have presented a plausible showing of causation that is within the jurisdiction of this Court as it considers the conformance of the pending dock extension application with the public good provisions of 29 V.S.A. § 405(b). Redressability also appears to be present here because Neighbors' alleged injuries could disappear if this Court on appeal denies the pending request for a permit amendment.

The heart of Applicant's standing argument is the claim that Neighbors will not suffer any particularized injury that is protected by statute. According to Applicant, all of Neighbors' concerns are shared by others and are therefore not particularized. We disagree. It is undisputed that Neighbors own property in the immediate vicinity of the proposed dock expansion. (See Ex. 2 attached to Neighbors' Mem. in Resp. to Applicant's Mot. to Determine Party Status and Mot. to Dismiss.) Neighbors allege that they will be personally injured by increased erosion to their property, increased noise, increased vehicular traffic, and the loss of particular plants and wildlife that Neighbors enjoy, all as a consequence of the proposed dock expansion. (See id.)

---

[4] The statute also grants standing to "any party by right," id., but the definition of a "party by right" cannot be read to include Neighbors and is therefore inapplicable here. See 10 V.S.A. § 8502(5).

Neighbors claim that the expected increase in boat traffic created by Applicant's project will cause or contribute to these anticipated injuries. (See id.)

The burden for showing an injury in fact is not a heavy one. Indeed, the U.S. Supreme Court has recently reiterated that "[w]hile generalized harm to the forest or the environment will not alone support standing, if that harm in fact affects the recreational or even the mere esthetic interests of the plaintiff, that will suffice." Summers v. Earth Island Inst., 129 S. Ct. 1142, 1149 (Mar. 3, 2009) (citing Sierra Club v. Morton, 405 U.S. 727, 734–36 (1972)). Although the Summers Court found that plaintiffs lacked standing there because they failed to identify a threat of "imminent and concrete harm," id. at 1150, Neighbors in this case have met the general minimal showing that the proposed dock expansion poses an imminent and concrete threat to their "esthetic interests," id. at 1149. Specifically, Neighbors allege esthetic interests in low noise levels that may be increased, and in particular plants, wildlife, and shorelines that may be impacted the moment that construction begins if the proposed dock expansion receives approval. (See Ex. 2.) The U.S. Supreme Court has explicitly stated that the "desire to use or observe an animal species, even for purely aesthetic purposes, is undeniably a cognizable interest for purposes of standing." Lujan v. Defenders of Wildlife, 504 U.S. 555, 562–63 (1992).

Neighbors further allege that the project could damage the property value of their shoreline properties. (See Ex. 2.) Since "mere esthetic interests . . . suffice" to confer standing, Summers, 129 S. Ct. at 1149, we conclude that appellants, such as Neighbors here, who also credibly assert potential negative impacts upon private property interests, surely have standing as well.

In addition to the esthetic and property interests that Neighbors claim will be harmed by Applicant's project, Neighbors also have standing in this case based upon alleged injuries in fact to their legally protected interests in the public good requirements of 29 V.S.A. § 405(b). See Hinesburg, 166 Vt. at 341 ("Injury in fact is defined as the invasion of a legally protected interest." (quotations removed)). Although the Legislature cannot grant standing to an appellant who fails to meet the constitutional requirements for standing, see Bennett, 520 U.S. at 163, the Legislature can create legally protected interests for specific groups of people. As discussed in detail below, the statutory scheme at issue here grants a number of protections specifically to abutting property owners such as Neighbors. See 29 V.S.A. §§ 405(a) and (c). We therefore conclude that Neighbors have standing to protect their legally protected interests in the public good requirements of 29 V.S.A. § 405(b).

We further conclude that the mere fact that Neighbors' particularized concerns may be shared by other members of the public does not cause a failure on Neighbors' part to demonstrate particularized injuries. While standing may be denied "when the asserted harm is a generalized grievance shared in a substantially equal measure by all or a large class of citizens," Warth, 422 U.S. at 499, those who suffer particularized injuries are not deprived of standing simply because others may suffer those specific injuries as well. See, e.g., Federal Election Commission v. Akins, 524 U.S. 11, 24 (1998) ("[W]here a harm is concrete, though widely shared, the Court has found injury in fact.").

The U.S. Supreme Court has explained that standing should not prevent injured litigants from bringing suit in these types of situations:

> Nor . . . could the fact that many persons shared the same injury be sufficient reason to disqualify from seeking review . . . any person who had in fact suffered injury. . . . To deny standing to persons who are in fact injured simply because many others are also injured, would mean that the most injurious and widespread Government actions could be questioned by nobody. We cannot accept that conclusion.

United States v. Students Challenging Regulatory Agency Procedures, 412 U.S. 669, 686–88 (1973) ("SCRAP"). We conclude that the possibility that Neighbors' potential injuries may be experienced by others does not deprive Neighbors of standing to present their claims to this Court.

Turning to the requirement that Neighbors fall into the "zone of interests" of the statute under which they claim standing, we find additional support for granting standing to Neighbors here. Neighbors' Revised Statement of Questions raises a number of issues relating to whether ANR's grant of Applicant's permit amendment properly assessed the project's effect of the public good—an analysis that is required by statute:

> In determining whether the encroachment will adversely affect the public good, the department shall consider the effect of the proposed encroachment as well as the potential cumulative effect of existing encroachments on water quality, fish and wildlife habitat, aquatic and shoreline vegetation, navigation and other recreational and public uses, including fishing and swimming, consistency with the natural surroundings and consistency with municipal shoreland zoning ordinances or any applicable state plans. If the department determines, after reviewing the applications, the written comments filed within the notice period and the results of the investigation, that the proposed encroachment will not adversely affect the public good, the application shall be approved.

29 V.S.A. § 405(b).

When interpreting statutes, courts must aim to "discern and implement the intent of the Legislature." Merkel v. Nationwide Ins. Co., 166 Vt. 311, 314 (1997). At first glance, this statute's reference to the "public good" appears quite similar to the phrase "any person" in the Endangered Species Act, and it is therefore quite possible that the Legislature intended to incorporate all Vermont citizens into this statute's "zone of interests" for purposes of standing. See Bennett, 520 U.S. at 165. But see Parker v. Town of Milton, 169 Vt. 74, 79 (1998) ("[S]tanding is not conferred on individuals merely by virtue of their status as beneficiaries of the interest protected by the public trust doctrine." (citing Hazen v. Perkins, 92 Vt. 414 (1918))).

Nevertheless, we do not need to decide that issue today. In both of the subsections directly surrounding 29 V.S.A. § 405(b), the Legislature makes specific reference to "abutting property owners." 29 V.S.A. §§ 405(a) and (c). In particular, abutting property owners—such as Neighbors in this appeal—are entitled to "written notice" of any ANR determination made or proposed to be made under 29 V.S.A. § 405(b). See 29 V.S.A. §§ 405(a) and (c). This requirement demonstrates that the Legislature saw abutting property owners such as Neighbors as within the "zone of interests" of this statute.

Indeed, looking at the statutory scheme as a whole, it becomes clear that it would thwart legislative intent to deny standing in this appeal to abutting property owners such as Neighbors. Again, the applicable statutory definition of a "person aggrieved" makes reference to those with a "particularized interest protected by the provisions of law listed in section 8503 of this title." 10 V.S.A. § 8502(7). One of the provisions specifically listed in 10 V.S.A. § 8503 is "29 V.S.A. chapter 11 (management of lakes and ponds)." 10 V.S.A. § 8503(a)(2). Chapter 11 includes the public good provision of 29 V.S.A. § 405(b). Thus, the Legislature clearly intended that some group would have the ability to bring appeals regarding the public good provision of 29 V.S.A. § 405(b); otherwise the reference to all of "29 V.S.A. chapter 11" would be overbroad. In interpreting statutes, we are directed to strive to "give[] effect to every word, clause and sentence." State v. Tierney, 138 Vt. 163, 165 (1980). We therefore must make every effort to interpret this statute as providing standing to at least some group of people to raise challenges concerning 29 V.S.A. § 405(b).

Although Applicant contends that another state agency could have standing to bring this appeal, we disagree with the notion that Neighbors who allege particularized injuries at the hands of one state agency should have to depend upon the good will of another agency to raise their concerns. All state agencies are a part of the executive branch of government, and to force the

8

rule of law to depend solely upon one state agency challenging another would thwart the checks and balances that are so essential to our constitutional democracy. Granted, the U.S. Supreme Court has noted that sometimes agency decisions are effectively unreviewable: "Our system of government leaves many crucial decisions to the political processes. The assumption that if respondents have no standing to sue, no one would have standing, is not a reason to find standing." Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 227 (1974). That said, the U.S. Supreme Court's reasoning in SCRAP makes it clear that courts should strive to avoid conclusions that result in "Government actions [that] could be questioned by nobody." SCRAP, 412 U.S. at 688; see also Marbury v. Madison, 5 U.S. 137, 147 (1803) (Marshall, J.) ("It is a settled and invariable principle, that every right, when withheld, must have a remedy, and every injury its proper redress.") This language from SCRAP is particularly applicable to a case such as this one, where the Legislature has explicitly granted abutting property owners (including Neighbors) the right to receive notice and the opportunity to participate. 29 V.S.A. §§ 405(a) and (c). We conclude that the specific references to "abutting property owners" in both subsections surrounding 29 V.S.A. § 405(b), combined with a specific provision for appealing public good determinations to this Court, makes it clear that the Legislature intended abutting property owners such as Neighbors to have standing to bring an appeal of a permit amendment issued under Chapter 11 of Title 29.

In summary, Neighbors have alleged several ways in which they stand to suffer particularized injuries to their legally protected interests if ANR's public good determination is upheld. We conclude that Neighbors have a right to appeal a dock expansion permit amendment such as this, since they are abutting property owners to the area that will be most affected by Applicant's proposed project. For these reasons, we conclude that Neighbors have standing to bring this appeal, and we **DENY** Applicant's motion to dismiss for lack of standing.

## IV.    Dismissal of Specific Questions in Neighbors' Revised Statement of Questions

Although we find that Neighbors have standing to bring this appeal, this Court remains constrained by the limited subject matter jurisdiction that the pending application, its appeal, and the applicable statutes and regulations bestow upon us. This Court has a duty to dismiss legal issues "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter." V.R.C.P. 12(h)(3).

Several of Neighbors' Questions appear premised upon compliance with past permit conditions or with the adjudication of private property rights from a prior Chittenden County

9

Superior Court proceeding. (See Neighbors' Statement of Questions 1–3.) In our examination of the applicable statutory provisions in Chapter 11 of Title 29, we fail to see a basis for reviewing a lake encroachment (such as the dock extension proposed here) in terms of its conformance with prior permits or with a previous adjudication of private property rights.[5] We conclude that Questions 1–3 are beyond the scope of our jurisdictional authority in this appeal, and we therefore **DISMISS** Questions 1–3.

## Conclusion

For all the reasons more fully discussed above, we **GRANT** ANR's motion to clarify Neighbors' Statement of Questions, and **DENY** Applicant's motion to determine that there is only one appellant in this appeal. As to Applicant's motion to dismiss, we **DENY** that motion and find that Neighbors have standing to bring this appeal, but we **GRANT DISMISSAL** as to Neighbors' Questions 1–3, which we find to be beyond the scope of our jurisdictional authority in this appeal. Neighbors' Questions 4–14 from their Revised Statement of Questions remain for adjudication and must now be scheduled for a de novo evidentiary hearing.

Within the context of the Questions remaining for adjudication, the parties are directed to submit a stipulated scheduling order—including dates for mediation—by Friday, August 21, 2009. Given the Court's pending trial schedule, and depending upon whether the parties here anticipate that the merits hearing might consume more than one business day, the Court anticipates that this matter would be scheduled for trial sometime after November 2009.

Done at Berlin, Vermont, this 31st day of July 2009.

_____
Thomas S. Durkin, Environmental Judge

---

[5] We understand that enforcement proceedings based upon past permit conditions are separate from proceedings to consider a new application.